661 P.2d 479

H.E. (Bud) ROBISON, d/b/a Robison Realty Company, Plaintiff, Counter-Defendant-Appellee and Cross-Appellant,

v.

Opal A. CAMPBELL, Defendant, Cross-Defendant-Appellee and Cross-Appellant,

and

Sam Q. Campbell, Defendant, Cross-Defendant-Appellee,

and

Beverly Katz, Defendant, Counterclaimant-Cross-Claimant and Appellant.

Sutin, Thayer & Browne, P.C., Appellee and Cross-Appellant.

No. 5464.

Court of Appeals of New Mexico.

Feb. 3, 1983.

Petitions for Certiorari Denied March 22, 1983.

Stephen D. Bass, Barnhart & Associates, P.A., Albuquerque, for plaintiff, counter-defendant-appellee and cross-appellant Robison.

Martin E. Threet, Threet & King, Albuquerque, for defendants Campbell.

Paula Tackett, White, Koch, Kelly & McCarthy, P.A., Santa Fe, for defendant, counterclaimant-cross-claimant and appellant Katz.

Linda N. Eitzen, Robinson, Stevens & Wainwright, P.A., Albuquerque, for appellee and cross-appellant Sutin, Thayer & Browne, P.C.

## OPINION

WOOD, Judge.

The prior appeal in this case, *Robison v. Katz*, 94 N.M. 314, 610 P.2d 201 (Ct.App.

1980), gives the factual and procedural background. In the prior appeal, a panel of this Court reversed a damage award in favor of Katz against Robison and Campbell (Opal A. and Sam Q. Campbell) based on negligent misrepresentation. The prior opinion states:

> The case is remanded to the trial court with an order to grant Katz rescission of the contract with Campbell. Rescission is to be accompanied with an accounting between Katz and Campbell. On remand, the court is also to hold hearings to determine 1) what special damages, and what punitive damages, if any, may be awarded Katz as against Robison, and 2) whether the attorneys' fees claimed by the Sutin firm are excessive.

This appeal is from the judgment entered after trial upon remand. The judgment gave Katz a net monetary award based on the rescission, consequential damages against Opal A. Campbell and Robison, and punitive damages against Robison. The judgment also awarded an attorney's charging lien in favor of the Sutin law firm (Sutin, Thayer & Browne, P.C.), which attached to Katz' recovery. The judgment ordered Katz to pay certain costs and dismissed Katz' claim against Sam Q. Campbell with prejudice. Katz appeals; the Sutin firm, Campbell and Robison cross-appeal. We group the issues, generally, as follows—those (1) decided summarily (2) between Katz and the Sutin firm, (3) between Katz and Campbell, (4) between Katz and Robison, and (5) involving costs. The specific contentions are identified in the discussion under each general grouping. Several of the specific contentions are disposed of by the rule that the trial court, on remand, has only the jurisdiction conferred by the opinion and mandate in the prior appeal. *Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App.1980).

*Issues Decided Summarily*

1. The number of appealing parties has resulted in numerous briefs. The number was increased, however, when Katz filed briefs indicating they were briefs in Katz' "cross-appeal". Inasmuch as the other parties involved in this so-called cross-appeal have filed answer briefs, no party was harmed by the extra briefing. The only consequence was to add to this Court's work.

■ Campbell contends that, in this case, Katz could not be both an appellant and cross-appellant. The contents of the briefs filed by Katz in her "cross-appeal" indicate that Katz was proceeding as an appellee in the cross-appeals of Campbell and Robison, *see* R.Civ.App.Proc. 3(b), N.M.S.A.1978, rather than as a true cross-appellant. The issues "raised" in Katz' cross-appeal were already before us as a result of the cross-appeals of Campbell and Robison. Katz' "cross-appeal" arguments are no more than elaborations of her answers to those cross-appeals. Thus, neither Campbell nor Robison have been prejudiced by Katz' designation of herself as a cross-appellant, as well as an appellant, and we need not decide the propriety of the designations.

2. The trial court erred in dismissing Katz' claim against Sam Q. Campbell. There are two reasons.

■ First, dismissal was wrong procedurally. References in the prior opinion to "Campbell" were to Opal A. Campbell and Sam Q. Campbell. *See* 94 N.M. 317, 610 P.2d 201. The prior opinion ordered rescission and an accounting against both Campbells. In light of the prior opinion, the trial court lacked the power (jurisdiction) to dismiss Sam Q. Campbell.

■ Second, dismissal was wrong under the facts. The trial court dismissed on the basis of Sam Q. Campbell's lack of participation in the events on which rescission was based. The dismissal disregards documents showing that Sam was a seller, and the trial court's unchallenged finding that Sam authorized his partner Opal to handle all negotiations. Opal's participation was also on behalf of Sam. There is no factual basis for the conclusion that Sam should be dismissed.

The judgment to be entered against "Campbell", upon the remand ordered by this opinion, is to be against both Campbells.

*Katz v. The Sutin Firm*

This dispute involves the attorney's charging lien awarded by the trial court; it subdivides into three contentions.

1. Whether the validity of the charging lien may be reviewed.

The Sutin firm contends that the propriety of awarding the charging lien may not be reviewed. The law firm claims that the validity of a charging lien was decided in the first appeal. It asserts that the prior opinion held that Katz' bankruptcy did not affect the charging lien awarded in the judgment entered after the first trial and that the prior opinion held that the charging lien was valid. It argues that, the validity of the charging lien having been determined, the issue is either res judicata or estoppel by judgment. These contentions are based on erroneous "findings" of the trial court.

The trial court erred in finding that the first opinion decided the bankruptcy issue. The reference to the bankruptcy in the first opinion was limited to a question of this Court's jurisdiction on the basis of facts before this Court at that time. *See* 94 N.M. 317, 610 P.2d 201. In this appeal, we have more than a pending bankruptcy petition; the bankruptcy proceeding has been completed and Katz has been discharged.

The trial court also erred in finding that the first opinion held that the charging lien was valid. Although the prior opinion indirectly approved of the charging lien awarded after the first trial, there was no issue before this Court concerning its validity, and the prior opinion did not decide its validity. The fee issue in the first appeal was whether the fees of the Sutin firm were excessive, and that issue was remanded to the trial court. *See* 94 N.M. 324, 610 P.2d 201.

▮ There has been no prior appellate determination of the validity of the charging lien awarded after the first trial. That charging lien was for prior services of the attorney; those services were the basis for the charging lien again awarded after trial

upon remand. There having been no prior decision on the merits of the charging lien, consideration of its validity is not barred by concepts of res judicata or estoppel by judgment. *See Christman v. Holland,* 92 N.M. 151, 584 P.2d 198 (Ct.App.1978).

2. Whether the charging lien is valid.

Katz attacks the validity of the charging lien awarded after trial upon remand. In the first appeal Katz conceded, properly, the validity of the charging lien awarded after the first trial. In this appeal, again properly, she does not change her position as to this. Her attack on the validity of the charging lien awarded after the second trial is based on an asserted lack of connection between the two judgments.

Before identifying and answering Katz' three contentions, we briefly restate concepts involved in the charging lien. *See Northern Pueblos Enterprises v. Montgomery,* 98 N.M. 47, 644 P.2d 1036 (1982); *Prichard v. Fulmer,* 22 N.M. 134, 159 P. 39 (1916), 2 A.L.R. 474 (1919).

The charging lien * * * is the right of an attorney * * * to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same[.] [Id. 22 N.M. 140, 159 P. 39.]

* * * * * *

[T]he lien originated in the desire on the part of the courts to protect attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand. [Id. 22 N.M. 145, 159 P. 39.]

The lien "is governed by equitable principles." [Id. 644 P.2d 1038.] *See also Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962).

Two of Katz' three contentions interrelate.

First, she points out that the damage award for negligent misrepresentation was reversed in the first appeal. On this basis she asserts that the charging lien awarded in the judgment after the first trial disappeared because the lien attached upon entry of that judgment and therefore the reversal left the situation as if no judgment had ever been entered. We agree that upon reversal of the damage award for negligent misrepresentation the situation was as if *that* judgment had never been entered. *O'Brien v. Great Northern Railroad Company,* 148 Mont. 429, 421 P.2d 710 (1966). Thus, the reversed damage judgment for negligent misrepresentation does not support the validity of the charging lien. This, however, is not dispositive; the validity of the charging lien does not depend upon the reversed damage judgment.

■ Second, Katz contends the judgment entered after trial upon remand was not recovered through any effort of the Sutin firm. Because the lien, by definition, is based on services of the attorney, she claims the lien awarded in this judgment is not valid. This disregards undisputed facts.

The Sutin firm represented Katz at the first trial. The Sutin firm is of record as one of the law firms representing Katz in the first appeal. Katz emotionally asserts that the Sutin firm was of little, if any, assistance in the first appeal. We accept this view without deciding it. The Sutin firm did not represent Katz at the trial after remand. We proceed on the basis that the charging lien is based on the services of the Sutin firm at the first trial.

One of the theories asserted at the first trial was that Katz was entitled to rescission. The trial court's findings were to the effect that the facts supported rescission, but it ruled: "Katz is not entitled to a rescission of the Katz-Campbells real estate contract because Katz cannot restore to Campbells the mobile home park." The prior appeal reversed this ruling; the trial court was ordered to grant rescission.

The judgment of rescission entered after trial upon remand was necessarily based upon the efforts of the Sutin firm in the first trial which established Katz' right to rescission. But for an incorrect legal ruling of the trial court, rescission would have been ordered in the judgment entered after the first trial. Because of the incorrect legal ruling at the first trial, the trial court did not rule on the accounting necessary to effect the rescission. The decision on the accounting was made at the trial after remand. However, at this second trial, Katz relied in part on evidence introduced by the Sutin firm at the first trial. The contention that the Sutin firm did not contribute to the judgment entered after trial upon remand is frivolous.

The charging lien for services in the first trial attached to the judgment entered after trial upon remand; it was that judgment that enforced the rescission established by the efforts of the Sutin firm in the first trial.

■ Katz' third contention is that her discharge in bankruptcy prevents the charging lien from attaching to the judgment entered after trial upon remand, which effected the rescission.

The judgment in the first trial was entered in March 1978. This date establishes that the services of the Sutin firm, on which the judgment for rescission was based, occurred prior to any bankruptcy proceedings. The bankruptcy petition was filed in November 1978. Katz was adjudged bankrupt in May 1979 and discharged in November 1979. The discharge order discharged Katz' personal debt, in excess of $60,000.00, to the Sutin firm for legal services.

The bankruptcy proceedings were pursuant to the Bankruptcy Code and not the Bankruptcy Reform Act which applies to petitions filed after October 1, 1979. *See* Public Law 95–998, § 402 (1978). Under the Bankruptcy Code a "discharge, being personal in character, releases the bankrupt's personal liability only. It follows, therefore, that a valid lien on property of the bankrupt existing at the time of adjudication in bankruptcy, which is not voided by the Bankruptcy Act, may be enforced not-

withstanding discharge of the bankrupt." *1A Collier on Bankruptcy* ¶ 17.29 (14th ed. 1978); *In re Rand Mining Co.,* 71 F.Supp. 724 (S.D.Cal.1947). The charging lien was not voided in the bankruptcy proceedings.

The question is whether the Sutin firm had a valid lien at the time Katz was adjudicated bankrupt. The services on which the lien was based were performed prior to the bankruptcy; however, the judgment to which the lien attached was entered after the bankruptcy discharge. *Hannah Paint, supra,* states: "The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services. * * * "

Although the lien related back, Katz asserts there was no valid lien because there was no "property of the bankrupt existing at the time of adjudication in bankruptcy". *See 1A Collier, supra.* This is incorrect. The Sutin firm had established the right to rescission, to be accomplished by an accounting, prior to the bankruptcy proceedings. That right was "property" existing at the time of the adjudication. *Citizens State Bank of Barstow, Tex. v. Vidal,* 114 F.2d 380 (10th Cir.1940); *McFadden v. Murray,* 32 N.M. 361, 257 P. 999 (1927).

The charging lien was valid.

3. The amount of the charging lien.

The amount awarded as a charging lien in the judgment entered after trial upon remand was $25,000.00. Katz asserts the trial court erred in arriving at this amount. The trial court stated: "The standard followed by the Court in awarding attorney's fees is *Johnsen v. Fryar,*" 96 N.M. 323, 630 P.2d 275 (Ct.App.1980). This case explained and applied the factors discussed in *Fryar v. Johnsen,* 93 N.M. 485, 601 P.2d 718 (1979). Katz contends the trial court misapplied the *Fryar* factors in arriving at the $25,000.00 amount. This resulted in extensive discussion in the briefs about the factors and their application. As to this, *see Morgan v. Public Service Co. of New Mexico,* 98 N.M. 775, 652 P.2d 1226 (Ct.App.1982).

Katz assumes the $25,000.00 amount would be erroneous if she can demonstrate

error as to any factor. The assumption lacks merit. The *Fryar* factors apply to an award of attorney fees in worker's compensation cases, the award in this case involves the exercise of equitable power by the trial court. *Northern Pueblos Enterprises v. Montgomery, supra.* The issue is not whether the trial court erred in utilizing any *Fryar* factor in reaching an equitable decision; the issue is whether that equitable decision was an abuse of discretion. Application or misapplication of *Fryar* factors is a false issue.

The Sutin firm contends the trial court abused its discretion in awarding the $25,000.00 amount; it asserts that it was entitled to a charging lien in the full amount of its fee, which was in the neighborhood of $61,000.00. The Sutin firm recognizes that Katz' personal obligation for the fee has been discharged, but points out that trial court findings are to the effect that the full amount of the fee was a reasonable charge. On the basis that its full fee was a reasonable amount, the Sutin firm claims the failure to award a charging lien in the full amount was an abuse of the trial court's discretion. We disagree.

The rescission ultimately obtained by Katz involved attorneys other than the Sutin firm in the prior appeal and the trial after remand. The trial court could properly consider the part played by the Sutin firm in the ultimate recovery and determine that "equitable relief for a reasonable fee" should be the $25,000.00. *See Northern Pueblos, supra.* There was no abuse of discretion.

The charging lien in the amount of $25,000.00 is affirmed.

*Katz v. Campbell (both of them)*

We have pointed out that the prior appeal ordered rescission, accomplished through an accounting. As to the basis for the accounting, the prior opinion stated (94 N.M. 320, 610 P.2d 201):

> An accounting between Katz and Campbell is appropriate because of the complexity of the situation. Katz is entitled to the return of her Los Alamos

house, her down-payment, and any other payments made on the property, including payments on underlying real estate contracts and mortgages, plus interest. From this should be deducted the fair rental value of the trailer park while it was in her possession, excluding the trailer space used by Campbell. Similarly, Campbell should be required to pay Katz the fair rental value of the Los Alamos house, excluding the apartment used by Katz, for the time Campbell was in possession of the house. Other rental adjustments may also be necessary. Lastly, the accounting should include payment to Campbell of the value of the original trailers sold or mortgaged by Katz.

### 1. Accounting—Campbell Owes Katz.

The trial court found that Katz was to receive the following from Campbell:

| | | |
|---|---|---|
| (A) | Value of Los Alamos house | $ 57,717.00 |
| (B) | Down payment | 20,000.00 |
| (C) | Payment from Katz to Campbell on real estate contract | 2,774.97 |
| (D) | Sums of money borrowed by Katz to subsidize the mobile home park business | 9,868.00 |
| (E) | Other payments made on mobile home park, difference between gross income and net income | 44,829.00 |
| (F) | Rental value of Los Alamos house from date of contract, July 29, 1976, to date of sale by Campbell, May, 1979, excluding that portion occupied by Katz. Fair rental value was $275 per month × 34 months | 9,350.00 |
| (G) | Six percent simple interest on all of the above items, except Item A, from date of contract to date of judgment. Six percent interest on Item A is from date of Campbell's sale of this property to date of judgment. The judgment is dated July 21, 1981 | 22,608.22 |
| | | $167,147.19 |

The challenges to items awarded or not awarded in favor of Katz are discussed in the sequence of their itemization above.

### 2. Item A. Value of the Los Alamos house.

Campbell complains that Katz receives the value of the Los Alamos property, yet Campbell does not receive the value of the mobile home park. This disregards the holding in the prior appeal. "If the trailer park property is lost, its loss should fall on Campbell, whose omissions and negligence * * * are grounds for rescission of the contract." This holding became the law of the case, binding on Campbell. *See Varney v. Taylor,* 79 N.M. 652, 448 P.2d 164 (1968). The lack of credit to Campbell for the value of the mobile home park may not be used to defeat credit to Katz for the value of the Los Alamos property she transferred to Campbell.

The $57,717.00 valuation of the Los Alamos property was as of the date of the contract between Katz and Campbell. Katz asserts this figure is erroneous in that she is entitled to the appreciated value of this property at the time of trial. This is an attack on the trial court's accounting method. The trial court valued the property as of the date of the contract with Campbell, awarded Katz the reasonable rental value of the property until Campbell sold it, and, after the sale, awarded Katz interest on the original valuation from the date of Campbell's sale. This approach by the trial court is not contrary to the holding in the prior opinion, and is not erroneous as a matter of law.

### 3. Items D and E. Money borrowed to subsidize the mobile home park and payments made on the park.

There was evidence of Katz' income and expenses in the operation of the mobile home park during the time the park was in her possession. The evidence indicated that operating income exceeded operating expenses by some $18,000.00 to $25,000.00. Campbell contends that (1) the prior opinion did not provide for either operating income or operating expenses to be included in the accounting; (2) Items D and E are operating expenses, and that if such expenses are properly included, then Katz will receive a

double recovery if the operating income is not included; and (3) the trial court erred in excluding evidence, at the trial after remand, of operating income greater than the evidence of operating income introduced at the first trial. Katz responds that Items D and E are "other payments" authorized by this Court in the prior opinion. Katz disputes the amount of her income claiming .that a management fee should have been included and, if included, that there is no excess of income over expenses. Katz further contends that evidence of additional income was properly excluded at the second trial because income had nothing to do with the accounting ordered in the prior opinion.

■ Item D—money borrowed by Katz—was the gross sum of a two-part loan that Katz used to pay off the indebtedness on two mobile homes. This loan, the payments made on the loan, and the balance due on the loan were included in the debt service figure shown by an exhibit prepared by an accountant. The trial court erroneously failed to include any amount for debt service in the accounting. Because debt service is to be added to the accounting, Item D is to be deleted from the accounting.

Item E is an operating expense. If operating expense is included, operating income should also be included to prevent double recovery. The trial court refused to consider operating income on the basis that the opinion in the prior appeal did not tell it to do so, however, the prior opinion did not tell the trial court to consider operating expenses either. The prior opinion did not provide for an accounting of profits and losses, either by Katz in operating the mobile home park, or by Campbell in dealing with the Los Alamos property. Exclusion of a profit and loss accounting avoided any question of management fees for either Katz or Campbell, *i.e.*, each party retains the operating income, each party bears the operating expenses.

■ The prior opinion provided for an accounting of "payments made on the property". Operating expenses are not pay-

ments made on the property. Excluding evidence of additional operating income at the second trial was proper because such income was not pertinent to the accounting ordered in the prior opinion. Item E is to be deleted from the accounting.

■ In lieu of Items D and E, debt service is to be included in the accounting. The prior opinion ordered inclusion of "payments on underlying real estate contracts and mortgages". We agree with Katz that this figure is $36,518.21.

4. Item F. Fair rental value of the Los Alamos property.

The prior opinion required Campbell "to pay Katz the fair rental value of the Los Alamos house, excluding the apartment used by Katz, for the time Campbell was in possession of the house." Katz contends she is entitled to fair rental value "from the time she sold it up until the present time", or 55 months rather than the 34 months used by the trial court. The answer is that the trial court lacked authority to use the 55-month figure; the law of the case was that fair rental value was to be figured "for the time Campbell was in possession". This was 34 months.

■ The Los Alamos property consisted of two apartments, each with a reasonable rental value of $275.00 per month. For the 34 months, the total reasonable rental value was $18,700.00. The trial court properly reduced this amount by the reasonable rental value of the apartment occupied by Katz. The trial court erroneously figured the reduction on the basis of a 34-month occupancy by Katz; her actual occupancy was 30 months. Thus, the proper reduction is $8,250.00, with a net due to Katz of $10,450.00. Item F is to be corrected to $10,450.00.

5. Item G. Interest calculations.

Because of changes in what Campbell owes Katz, the interest must be refigured. The trial court, with assistance of counsel, must do this on remand. *See Southern Union, etc. v. Wynn Exploration,* 95 N.M. 594, 624 P.2d 536 (Ct.App.1981).

6. Accounting—Katz owes Campbell (both of them).

The trial court found that Campbell was entitled to offset the following from the amount that Campbell owes Katz:

| | |
|---|---|
| A) Reasonable rental value of mobile home while in possession of Katz – approximate net income for 16 months of occupancy, Finding No. 70, $25,600; plus debt service of $2,295.50 per month x 16 months, $36,728.00; minus reasonable rental value of Campbell's trailer space, $480.00 = | 61,848.00 |
| B) Value of ... [three] mobile homes included in Real Estate Contract (Katz' monthly payments included above) plus 10% interest for 16 months = | 12,000.00 |
| | 1,600.00 |
| | 13,600.00 |
| TOTAL | $ 75,448.00 |

7. Katz does not claim that Campbell was not entitled to an offset for the reasonable rental value of the mobile home park while it was in Katz' possession; her claim is that the amount of this offset was erroneous.

■ Katz asserts that her witness, McCall, was the only witness to testify as to the rental value, and that McCall testified to a negative rental value. Katz improperly refers only to evidence in her favor; on review, we look to evidence that supports the trial court's finding. McCall testified on cross-examination that one method of computing the rental value was to add the complete debt service to the excess of income over expenses. The trial court utilized this formula in reckoning the reasonable rental value. The accountant's exhibit as to actual net rental income is other evidence supporting the figure found by the trial court. Even if the method utilized by the trial court is incorrect, it reached the correct result. *See Beall v. Reidy*, 80 N.M. 444, 457 P.2d 376 (1969). The offset of $61,848.00 is supported by substantial evidence, and is affirmed.

■ 8. Katz challenges the $12,000.00 amount found to be the value of three mobile homes transferred by Campbell to Katz. She asserts that the value was either

(1) equal to the indebtedness against the mobile homes of $7,831.01, which Katz paid, or (2) was $11,500.00 less the indebtedness. She contends that the $12,000.00 amount "has no basis in fact, but is a number pulled out the air [sic]." Again, Katz refers us only to evidence favorable to her claim. Evidence as to the value of the three mobile homes ranged from $11,500.00 to $17,000.00; the $12,000.00 amount is within the range of the evidence. Katz was given credit for payments on the mobile homes; the credit is included in the "payments made" portion of the amount Campbell owes Katz. The offset of $12,000.00 is supported by substantial evidence, and is affirmed.

9. The total offset found by the trial court—$75,448.00—is affirmed.

10. Campbell's challenge to the accounting includes a claim that the trial court erred in denying Campbell's motion for a new trial. The motion sought to reopen, on the basis of newly discovered evidence, the question of whether there should be a rescission. The motion was properly denied; Campbell did not show an entitlement to relief under either R.Civ.Proc. 59 or 60(b)(2), N.M.S.A.1978 (1980 Repl.Pamph.).

11. The net award in the judgment in favor of Katz and against Campbell is based upon two grounds. The first ground—the rescission—has been discussed. The second ground—a damage award for negligent misrepresentation—is also involved in the Katz-Robison issues and is discussed in that portion of the opinion.

*Katz v. Robison*

1. The trial court found:

3. Katz is entitled to the following damages resulting from the negligent misrepresentation that was previously determined in the Court's Findings and Conclusions:

| | |
|---|---|
| A) The following are deemed consequential damages and must be shared by Robison with Campbell, even though they were included in the Katz-Campbell accounting: a) Sums of money borrowed by Katz to subsidize the mobile home park business. | 9,868.00 |

b) Other payments made on the mobile home park, difference between gross income and net income to Katz, Conclusions of Law Nos. 69, 70. 44,829.00

c) Rental value of Los Alamos house from date of contract, July 29, 1976, to date of sale by Campbell, May, 1979, excluding that portion occupied by Katz. Fair rental value was $275 per month × 34 months = 9,350.00
64,047.00

d) Prorated interest at 10% for 4 years, 9 months. 30,400.00
Total $94,447.00

B) Medical expenses (against Robison alone) 219.13

These amounts were restated in the trial court's conclusion that Campbell and Robison both contributed causally to this damage.

The judgment recites that Campbell and Robison are jointly and severally liable for consequential damages in the amount of $81,711.41. This liability is necessarily based on the finding and conclusion referred to in the preceding paragraph. Our understanding is that the reduction from $94,447.00 to $81,711.41 resulted from refiguring the interest.

An issue, as to both Campbell and Robison, is the propriety of this damage award.

2. The $81,711.41 award against Campbell is erroneous for two reasons. First, the award is for negligent misrepresentation. An award of damages for negligent misrepresentation was reversed in the prior appeal and the cause was remanded with directions that the trial court grant rescission, with an accounting to effect the rescission. Upon remand, the trial court lacked authority to award damages for negligent misrepresentation. Second, should it be claimed that the $81,711.41 was a consequential damage from the events on which the rescission was based, the prior opinion specifically limited such a damage award to Robison.

3. The monetary award to be entered against Campbell, upon the remand ordered by this opinion, is to be based entirely on the accounting between Katz and Campbell.

4. The $81,711.41 award against Robison is also erroneous. The prior opinion authorized "consequential" damages against Robison, but defined consequential damages to be "special damages": "[T]hose which must have been or should have been contemplated by Robison as the probable consequences of the misrepresentations." (94 N.M. at 321, 610 P.2d 201.)

The prior opinion, at 94 N.M. 321, 610 P.2d 201, stated: "We limit her recovery from Robison to special damages in order to prevent her from obtaining a double recovery." Item A in paragraph 1 above is to be recovered by Katz as part of "payments made". Item C in paragraph 1 above is also to be recovered by Katz. *See* discussion under *"Katz v. Campbell"*. To prevent a double recovery, these two items were not authorized special damages recoverable against Robison.

Item B in paragraph 1 above was Katz' expenses in operating the mobile home park which were paid out of operating income. "Damage" by definition, means an actual loss or detriment. *Clark v. Cassetty,* 71 N.M. 89, 376 P.2d 37 (1962); *Christman v. Voyer,* 92 N.M. 772, 595 P.2d 410 (Ct.App. 1979). The operating expenses were not a "damage" and, thus, not a special damage.

5. Once the erroneous $81,711.41 amount is deleted from the judgment against Robison, the award is reduced to $219.13 for medical expenses. This award for medical expenses was proper; Robison does not challenge the $219.13 amount.

6. The prior opinion held that punitive damages could be awarded against Robison because of his material representations in reckless disregard of the truth, but only if Katz proved actual damage. Robison contends the punitive damage award was error. The trial court could properly award punitive damages because Katz has recovered $219.13 as actual damage.

Both Robison and Katz complain about the $10,000.00 punitive damage award; Robison wants it decreased, Katz wants it increased. Although punitive damages are

imposed as punishment (see the prior appeal) the amount of the punitive damages must be considered in relation to two items—the enormity of Robison's wrong and the actual damage. *Marler v. Allen,* 93 N.M. 452, 601 P.2d 85 (Ct.App.1979).

■ The trial court's award of punitive damages considered an amount of actual damage which has been considerably reduced. For this reason the punitive damage award is vacated. On remand, the trial court is to redetermine the amount of punitive damages consistent with this opinion.

*Costs*

1. The trial court awarded $2,066.39 to Katz as costs of the first trial. This award is not challenged, and is affirmed.

■ 2. The trial court ruled that Katz was entitled to costs of the second trial "which will be determined separately in the presentation of the Bill of Costs." Her entitlement to costs is affirmed; the amount is yet to be determined.

3. The trial court also ruled that: "Katz will pay to the Court the sum of $3,028.74, the cost of Transcript of Proceedings on appeal, plus $1,286.96, Clerk's costs, for reimbursement in accordance with a previous Order of the Court, June 13, 1978." The order of June 13, 1978 authorized Katz to appeal after the first trial in forma pauperis; the order also provided that Katz was to reimburse the costs of the first appeal in the event that she ultimately recovered.

■ Katz indirectly asserts that the trial court erred in ordering her to reimburse the trial court for the costs of the first appeal. She suggests that because her first appeal was in forma pauperis, she could not ask this Court, in the first appeal, to award non-existent costs, and that a requirement that she reimburse these costs is improper. We disagree. The trial court conditioned its order, she was to reimburse the trial court if she ultimately prevailed. That condition has occurred. The trial court's reimbursement order was not an abuse of discretion. *South v. Lucero,* 92 N.M. 798, 595 P.2d 768 (Ct.App.1979).

In this appeal Katz asks that we award her the costs of the first appeal which she must reimburse. Because mandate in the first appeal has been issued, we lack authority to award costs in the first appeal. *B & H Company, Inc. v. Moss,* 89 N.M. 549, 555 P.2d 372 (1976); *Matter of Miller,* 89 N.M. 547, 555 P.2d 142 (1976).

Katz included in her bill of costs the amount of the appellate costs that she is required to reimburse the trial court. The trial court has not yet ruled on the cost bill, see paragraph 2 above. The question of the costs of the first appeal is appropriately before the trial court because those costs were contingent, and the contingency has now occurred. Because Katz must now pay, it is appropriate to consider whether her payment should be reimbursed by the other parties. *Compare Mills v. Southwest Builders, Inc.,* 70 N.M. 407, 374 P.2d 289 (1962). In considering whether Katz should recover the costs of the first appeal from the other parties, the trial court should bear in mind that the costs are those for which recovery is specifically authorized and that Katz is the prevailing party. Rule of Civ. App.Proc. 27, N.M.S.A.1978; *see* § 39–3–12, N.M.S.A.1978.

The judgment entered after trial upon remand is vacated; the cause is remanded to the trial court for entry of an amended judgment. The amended judgment shall:

1. Reinstate Sam Q. Campbell as a party. The judgment shall run against Sam Q. Campbell as well as Opal A. Campbell.

2. Again award the Sutin firm a $25,-000.00 charging lien against the judgment in favor of Katz.

3. Delete from the accounting of what Campbell owes Katz, Item D for $9,868.00 and Item E for $44,829.00, and substitute for these two items the sum of $36,518.21.

4. Delete from the accounting of what Campbell owes Katz Item F for $9,350.00 and substitute the sum of $10,450.00.

5. After complying with above paragraphs 3 and 4, recalculate the interest in Item G of the accounting of what Campbell owes Katz.

6. Subtract from the new total of what Campbell owes Katz the $75,448.00 offset of Campbell and enter judgment for Katz, against Campbell, for the difference. No judgment against Campbell is to be entered on the basis of negligent misrepresentation or consequential damages.

7. Award Katz judgment against Robison for $219.13 special damages.

8. Determine, on the present record and without taking additional evidence, the punitive damages, if any, to be awarded in favor of Katz and against Robison.

9. Award costs for the first and second trials and for the first appeal consistent with this opinion.

The parties will bear their own appellate costs in this appeal.

IT IS SO ORDERED.

NEAL, J., concurs.

LOPEZ, J., concurs in part and dissents in part.

LOPEZ, Judge (concurring in part and dissenting in part.).

I concur in part and dissent in part with the majority opinion.

1. I agree with the two issues summarily disposed of in the majority opinion and I agree with the decision on costs.

2. I disagree with the majority opinion on the issue between Katz and the Sutin firm on attorneys' fees.

Under this point Katz challenges the court's findings number 8, 9, 11, 12, 13, 14, 15, 16, and 17 and conclusions of law numbers 11 and 12. The challenged findings and conclusions provide as follows:

8. There were no offers of settlement. What could have been deemed a developing offer was destroyed by Katz filing a grievance with the Real Estate Commission.

9. The award in the first trial was a net to Katz of approximately $25,000. In addition, Thayer assisted in removing from Katz the liability of the existing contracts. The combined award netted to Katz approximately $148,000.

\*    \*    \*    \*    \*    \*

11. The Thayer law firm expended the amount of time at the prevailing rates of $60 an hour to earn the fees charged. This Court, however, must balance those fees earned with the amount of the award in both cases.

12. The issues were extensively treated during the first trial, intermittently over a period of several months.

13. The ultimate issue upon which Katz prevailed was ultimately determined by the Appellate Court. It was a departure from the standard Rule that rescission would not be obtained unless the seller was put in status quo ante. This was the theory presented by the Thayer firm on behalf of Katz.

14. The fees charged by Thayer, the less-experienced attorneys, clerks, etc., were well within the prevailing rates charged at the time they were assessed.

15. Thayer is highly experienced in the law and obtains ability and skill in the top 10 percent of the legal community in Albuquerque.

16. The average rate of inflation from the onset of initial contact between Katz and Thayer has been 8–10% per year.

17. The Court of Appeals has previously addressed and decided the issue of bankruptcy.

Conclusions of Law:

11. The Norman Thayer law firm has a valid charging lien in accordance with the ruling of the Court of Appeals.

12. Norman Thayer is entitled to reasonable attorney's fees in the amount of $25,000.00 including tax, to be paid by Katz. The standard followed by the Court in awarding attorney's fees in *Johnsen v. Fryar*, N.M. Bar Bulletin, November 6, 1980.

Katz requested the trial court as follows:

Ms. Katz requested the court to find that Ms. Katz's bankruptcy discharged the underlying attorneys' fee debt to the Sutin firm; and that the subsequent reversal of the trial court's judgment con-

stituted an eradication of the judgment to which the lien attached. [Katz's Requested Findings of Fact Nos. 27 and 28, Tr. 108]

Ms. Katz further requested the trial court to find that subsequent to the entry of the first trial court judgment, Ms. Katz filed her Petition in Bankruptcy and obtained a discharge of the $70,000.00 attorneys' fee debt to the Sutin firm. Ms. Katz further requested findings that following this discharge, the Court of Appeals set aside the previous judgment entered in favor of Ms. Katz; and because the charging lien had attached to a specific judgment that was destroyed by the reversal of the original judgment; any request by the Sutin firm for a claim of a charging lien against any judgment hereafter granted Katz should be denied. [Katz's Requested Findings of Fact Nos. 29, 30, 31, 35, 36, 48, 49 and 51, Tr. 108–111]

The trial court, prior to trial, ruled that the standards set forth in *Johnsen v. Fryar,* 96 N.M. 323, 630 P.2d 275 (Ct.App. 1980) applied to an award of attorneys' fees for the benefit of the Sutin firm. This ruling, contained in a letter to counsel, prompted Katz to request that the trial court find and conclude that the Sutin firm did not meet the standard of reasonableness established in *Fryar* and that in fact, the forfeiture of the Stepnoski contract occurred partially as a result of the negligence and inattention of the Sutin firm. [Katz's Requested Conclusions Nos. 29, 31, 32, 33, 34, 37 and 38, Tr. 108–110]

Instead, the trial court found that the Sutin firm met the *Fryar* standard for determining reasonableness of attorneys' fees. Further, Judge Sanchez ruled that the issue upon which Ms. Katz ultimately prevailed, rescission, was a departure from the standard rule that rescission is unobtainable without putting the seller in status quo ante and that the Sutin firm had presented this in the trial court on behalf of Ms. Katz. [Court's Findings, Nos. 8, 9, 11, 12, 13, 14, 15, 16; Conclusions of Law, Nos. 11 and 12; Tr. 139–140 Challenged, Point I.]

Ms. Katz requested the Court to find that the Sutin firm refused to represent her on appeal. Ms. Katz also requested the court to find that because of the subsequent reversal by this court, the Sutin firm was not successful in representing her. Thus, because no fruits of the Sutin firm's efforts existed, the firm is not entitled to a charging lien on any subsequent judgment obtained by Katz. [Katz Requested Findings Nos. 32, 33, 36, 40, 45, 46, 49 and 51, Tr. 109–111]

Katz argues that Sutin is not entitled to its attorney's fees because (1) the debt was discharged in bankruptcy and the charging lien was destroyed upon this court's reversal in *Robison I;* (2) the new judgment is not a "fund" recovered through Sutin's aid; and (3) Sutin failed to meet the requirements of *Johnsen v. Fryar.*

Sutin argues that the only issue raised by Katz on the first appeal was the reasonableness of attorney's fees. Katz did not challenge the validity or priority of Sutin's fees and lien. Accordingly, this court remanded and ordered the trial court to determine whether the fees were reasonable. *Robison I,* 94 N.M. at 322, 610 P.2d 201.

Sutin further contends that because this court remanded for consideration of reasonableness of the fees, the trial court was without jurisdiction to determine the effect of Katz's bankruptcy. Sutin also argues that because Katz admitted the validity of the lien in *Robison I,* she is now estopped from denying it.

Sutin also argues that this court determined the effect of Katz's bankruptcy when it stated as follows:

Although appellant Katz filed a petition in bankruptcy in federal court in Albuquerque on November 16, 1978, those proceedings do not bar our consideration of this appeal, since the trustee in bankruptcy abandoned the assets connected with this appeal on December 21, 1978. Although a determination of bankruptcy is pending in federal court, a state court may consider claims involving property

which has been abandoned by the trustee in bankruptcy. *Vybiral v. Schildhauer,* 144 Neb. 114, 12 N.W.2d 660 (1944). Katz is the proper party to pursue this appeal; because, when a trustee in bankruptcy abandons an asset, the property or right reverts to the bankrupt. *Abo Land Co. v. Tenorio,* 26 N.M. 258, 191 P. 141 (1920). The court may determine Katz' assets and liabilities with respect to the subject matter of this suit, as both assets and liabilities have been abandoned by the trustee in bankruptcy. A trustee who abandons an asset also abandons any liabilities that accompany it. *In re Polumbo,* 271 F.Supp. 640 (W.D.Va.1967).

94 N.M. at 317, 610 P.2d 201.

Finally, Sutin argues that because this court considered the bankruptcy issue with respect to the charging lien, the issue is *res judicata* and law of the case. In oral argument Sutin conceded that the charging lien is based on the first judgment and not on the second.

### A. Whether Katz' Debt to Sutin was Discharged in Bankruptcy.

Katz's judgment in the original action was $26,000, to which Sutin filed and attached a $49,000 attorney's charging lien. On November 13, 1978, Katz filed a bankruptcy petition, listing on the schedule of debts $70,000 as an estimated amount owed Sutin. Katz was adjudged bankrupt on May 9, 1979. The bankruptcy proceedings were conducted pursuant to the Bankruptcy Code. The Bankruptcy Reform Act was enacted during this time, but applies to petition filed after October 1, 1979. *See* Bankruptcy Reform Act, Pub.L. 95–598 § 402 (1978). Katz' petition was filed in November 1978.

Under the Bankruptcy Code, "[a] discharge, being personal in character, releases the bankrupt's personal liability only. It follows, therefore, that a valid lien on property of the bankrupt existing at the time of adjudication in bankruptcy, which is not voided by the Bankruptcy Act, may be enforced notwithstanding discharge of the bankrupt." 1A *Colliers on Bankruptcy,* § 17.29 (14th ed. 1978), *see also In re Rand Mining Co.,* 71 F.Supp. 724, 727 (S.D.Cal. 1947). Charging liens are recognized as a valid lien in New Mexico. *See Prichard v. Fulmer,* 22 N.M. 134, 159 P. 39 (1916). The Sutin lien was not specifically discharged in bankruptcy. Therefore, while the underlying debt was discharged, the charging lien survived bankruptcy. The question then becomes whether the lien on Katz's judgment (or the judgment itself) survived this court's remand in *Robison I.* The question also remains whether Katz can raise this issue on the second appeal.

I would hold that the reversal of a judgment operates to make the original judgment void, as if never rendered. *O'Brien v. Great Northern Railroad Company,* 148 Mont. 429, 421 P.2d 710 (1966), *cert. denied,* 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 974 (1967). As a result of the reversal of Katz's judgment, any rights to proceeds from that judgment were immediately extinguished and lien rights secured by that judgment were also void. A lien operates to secure the payment of a debt and is simply a charge upon property for the payment or discharge of a trial debt. It is a quantified right which the law recognizes to secure payment of a debt, the payment of which may only be satisfied out of a particular thing to which the lien has attached. *Swanson v. Graham,* 27 Wash.2d 590, 179 P.2d 288 (1947). Since a lien does not attach to abstract rights, but only to some designated property, a lien continues in existence only so long as the property to which it attaches continues in existence. Therefore a lien is also destroyed upon the destruction of property to which it attached. *United States v. Salerno,* 222 F.Supp. 664 (D.Nev.1963), *modified on other grounds,* in *Mutual Life Insurance Company of New York v. United States,* 343 F.2d 71 (9th Cir.1965). Upon reversal of Katz's judgment by this court in *Robison I* the lien attached thereto the judgment was destroyed. Therefore, although the charging lien followed the $26,000.00 judgment when it was abandoned by the Bankruptcy Court, that lien was extinguished by this Court.

Furthermore, under the Bankruptcy Code, once the underlying debt was dis-

charged, there was no basis for creating a new charging lien on the second judgment. *See* 1A *Colliers on Bankruptcy* § 17.30 (14th ed. 1978). Thus, according to the Federal District Court's discharge in bankruptcy "[a]ll creditors whose debts are discharged by this order . . . are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the above-named bankrupt."

Sutin argues, however, that we need never determine whether Katz's bankruptcy barred a second lien because Katz admitted validity of the lien in the first appeal. Sutin continues, suggesting that principles of *res judicata,* law of the case and estoppel bar Katz from now arguing discharge in bankruptcy. The trial court apparently agreed with this position, finding "17. The Court of Appeals has previously addressed and decided the issue of bankruptcy."

Sutin's reliance on this court's discussion of bankruptcy in *Robison I* is overstated. Pursuant to Campbell's motion to dismiss for lack of jurisdiction this court stated that "[a]lthough a determination of bankruptcy is pending in federal court, a state court may consider claims involving property which has been abandoned by the trustee in bankruptcy." 94 N.M. at 317, 610 P.2d 201 (citation omitted). Sutin and the trial court apparently construe this mention of bankruptcy to preclude further discussion of bankruptcy. *Res judicata* and law of the case are not such broad concepts. We choose to review these issues on the second appeal.

### B. Whether the Second Judgment was a "Fund" Recovered Through Sutin's Aid

We need not discuss this point because the parties agree that the charging lien is not based on the second, but on the first, judgment.

### C. Whether the Trial Court Properly Followed the *Fryar* Standard

Sutin concedes that the standards of *Fryar* do not apply to this case.

Based upon the authorities I have reviewed and the facts and circumstances of this case, I would hold that the trial court's findings of fact regarding attorneys' fees and charging lien or liens are not supported by substantial evidence. Furthermore, the trial court's conclusions of law regarding attorneys' fees and charging lien or liens are not supported by law. I therefore conclude and would hold that the charging lien for attorneys' fees is void, and that Sutin is not entitled to recover any attorneys' fees.

3. Except where consistent with the following, I disagree with the majority opinion regarding the accounting between Katz and the Campbells.

This court ordered recision and an accounting on the Katz-Campbell contract. That order provided as follows:

> An accounting between Katz and Campbell is appropriate because of the complexity of the situation. Katz is entitled to the return of her Los Alamos house, her down-payment, and any other payments made on the property, including payments on underlying real estate contracts and mortgages, plus interest. From this should be deducted the fair rental value of the trailer park while it was in her possession, excluding the trailer space used by Campbell. Similarly, Campbell should be required to pay Katz the fair rental value of the Los Alamos house, excluding the apartment used by Katz, for the time Campbell was in possession of the house. Other rental adjustments may also be necessary. Lastly, the accounting should include payment to Campbell of the value of the original trailers sold or mortgaged by Katz.

94 N.M. at 320, 610 P.2d 201. Pursuant to that order the trial court accepted evidence and performed an accounting, awarding the following to Katz:

2. With reference to Katz, she is to receive from Campbell the following:

| | | |
|---|---|---|
| A) | Value of Los Alamos house, previous Conclusions of Law No. 7 | $ 57,717.00 |

| | | |
|---|---|---|
| B) | Down payment, Conclusion of Law No. 7. | 20,000.00 |
| C) | Payment from Katz to Campbell on Real Estate Contract, Finding of Fact No. 67. | 2,774.97 |
| D) | Sums of money borrowed by Katz to subsidize the mobile home park business | 9,868.00 |
| E) | Other payments made on the mobile home park difference between gross income and net income Conclusions of Law Nos. 69, 70. | 44,829.00 |
| F) | Rental value of Los Alamos house from date of Contract, July 29, 1976, to date of sale by Campbell, May, 1979, excluding that portion occupied by Katz. Fair rental value was $275 per month × 34 months | 9,350.00 |
| | | 144,538.97 |
| G) | 10% simple interest per annum, July 29, 1976—present, i.e. 4 years, 9 months, $14,454 × 4 years = $57,816 + 9 months, $10,841 = | 68,657.00 |
| | Total | $213,195.97 |

The court amended section (G) of the accounting by replacing 10 percent interest with the legal rate of 6 percent. *See* § 56–8–3 N.M.S.A.1978. The recomputed amount of interest due on the accounting was $22,608.22 for a total due Katz of $167,147.21.

Katz argues that the court erred in determining portions (E) and (F) of the amount due her. Katz predicates the argument that section (E) is erroneous on the court's use of "Conclusions of law 69 and 70." The trial court's accounting refers to conclusions 69 and 70, however, only 14 conclusions were made. We must assume that the court and the parties are referring to findings of fact 69 and 70.

Finding 69 provided that "Katz grossed $70,194.00 from the business." Finding 70 provided that "Katz netted $25,265.00 from the business." Subtracting finding 70, $25,265.00, from finding 69, $70,194.00, results in a recovery by Katz of $44,929.00. The trial court made a mathematical error of $100.00 in finding that the difference between finding 69 and 70 was $44,829.00.

The parties agree that evidence from the first and second trials was considered by the trial court in performing the accounting. Our duty on appeal is to determine whether the trial court's findings are supported in the record by substantial evidence. *Baker v. Benedict,* 92 N.M. 283, 287, 587 P.2d 430 (1978).

An examination of the evidence presented at the first and second trials reveals that there is substantial evidence in the record to support section (E). The trial court's finding in section (E) was expressly based on its findings in the first trial. Finding 69, fixing gross income, is based on Katz's exhibit from the first trial. The exhibit was introduced through Katz's testimony.

Finding 70, fixing net income, was arrived at by taking the gross income and subtracting the trailer park expenses. Katz and Campbell submitted evidence of various park expense. It was for the trial court, as the finder of fact, to consider the inconsistent claims and to determine which of them were recoverable. *Lewis v. Bloom,* 96 N.M. 63, 628 P.2d 308 (1981). Evidence in the record supports the court's findings. Moreover, because evidence from both trials was used, it makes no difference that the court's accounting was based in part on the figures arrived at during the first trial. Therefore, Katz's objection that the second judgment was based on findings made in the first trial is without merit.

Katz's second assignment of error is that the trial court erred in accounting for the rental value of the Los Alamos house. The house was duplex rental unit. In finding 2(F) the court found that the rental value of the house, excluding the amount occupied by Katz, was $275.00 per month. The term of Campbell's occupation of the house was 34 months, for a total of $9,350.00.

This portion of the accounting is confused by the fact that our mandate ordered return of the Los Alamos house to Katz, but Campbell had disposed of the property. In light of these facts the trial court ordered Campbell to pay Katz the value of the house at the time of contracting, plus six

percent interest from the date of the contract. I would hold that the court properly performed this portion of the mandate. The value of the house, plus interest, most nearly places Katz in the economic position which she enjoyed prior to contracting. This is the purpose of rescission.

The mandate also called for Campbell to account to Katz for the reasonable rental value of the house for the period that Campbell had possession of the house. *Robison I,* 94 N.M. at 320, 610 P.2d 201. Campbell was in possession for 34 months. The mandate further ordered that from this amount Campbell was to offset the reasonable rental value of the portion of the house which remained occupied by Katz. Katz occupied half of the dwelling for 30 months. The total rental value of the duplex was $550; $275 for each unit. Katz is entitled to $18,700.00, reduced by $8,250 for a total of $10,450.00. The trial court erred in excluding the four month period when Campbell was in possession of the duplex but Katz did not occupy any portion of the property. I agree with the order in the majority opinion to amend section (F) to reflect this recomputation.

The next assignment of error in the accounting is section (A) of the Campbell offset. Section (A) provides as follows:

A)   Reasonable rental value of mobile home [park] while in possession of
     Katz—approximate net income for 16 months of occupancy, Finding No. 70, $25,600;  plus debt service of $2,295.50 per month × 16 months, $36,728.00;  minus reasonable rental value of Campbell's trailer space, $480.00 =                            $61,848.00

This court's mandate ordered that Campbell was entitled to offset from the amount owed Katz "the fair rental value of the trailer park while it was in her [Katz's] possession, excluding the trailer space used by Campbell." *Robison I,* 94 N.M. at 320, 610 P.2d 201. Katz was also entitled to recover "payments on underlying real estate contracts and mortgages, plus interest." *Id.*

For the determination of the reasonable rental value of the trailer park the court relied on finding of fact 70 from the first trial. I have already stated that this finding is supported by substantial evidence. Accordingly, further discussion is not warranted.

The mandate also provided that from the reasonable rental value of the trailer park was to be subtracted the value of the trailer space occupied by Campbell. The court found the value of the trailer space to be $480.00. This value was set by Campbell in their proposed findings during the first trial, and the record does not show that Katz objected to it. Findings not objected to become the facts upon which the case rests. *Loco Credit Union v. Reed,* 85 N.M. 729, 516 P.2d 1112 (1973). Accordingly, we must assume the $480.00 value to be correct.

The final calculation at issue in section (A) is the propriety of Campbell's offset of $36,728.00 in debt service. The mandate provided that Katz was entitled to recover "any other payments made on the property, including payments on underlying real estate contracts and mortgages, plus interest." *Robison I,* 94 N.M. at 320, 610 P.2d 201. Rather than follow the mandate, however, the trial court erred permitting Campbell to offset a debt service of $36,728.00. This figure should have been credited to Katz, to be paid by Campbell.

In section (B) of the Campbell offset the court found that the three trailers transferred to Katz as part of the real estate contract had a value of $12,000.00. Katz contends that witnesses testified that the trailers were worth between $11,500.00 and $17,000.00, and that she paid off an indebtedness on the trailers of $7,831.01. She maintains that she is entitled to recover the value of the trailers plus payments made on the underlying debt. I agree that the trial court did not err in fixing the value of the trailers at $12,000.00. Evidence in the record supports this finding. The amount is within the range testified to by Katz's own witnesses. Furthermore, to permit Katz $12,000.00 plus return of her debt relief

would give the trailers a value of $19,000.00 to $25,000.00. Evidence in the record does not support this range of recovery.

Accordingly, I would instruct the trial court to enter an order reflecting the following accounting:

Katz is entitled to receive from Campbell the following:

| | | |
|---|---|---|
| (A) | Value of the Los Alamos house | $ 57,717.00 |
| (B) | Down Payment | 20,000.00 |
| (C) | Payment from Katz to Campbell on the real estate contract | 2,774.97 |
| (D) | Money borrowed by Katz to subsidize the mobile home park business | 9,868.00 |
| (E) | Other payments made on the mobile home park | 44,829.00 |
| (F) | Reasonable rental value of the Los Alamos house excluding the portion occupied by Katz | 10,450.00 |
| (G) | Debt service paid by Katz on the park for 16 months | 36,728.00 |
| (H) | Six percent simple interest per annum four years 9 months | 51,974.50 |
| | TOTAL | $234,341.47 |

Campbell is entitled to offset the following:

| | | |
|---|---|---|
| (A) | Reasonable rental value of the mobile home park while in Katz's possession minus value of the lot occupied by Campbell | $25,120.00 |
| (B) | Value of three mobile homes included in the real estate contract, plus six percent interest | 12,000.00<br>960.00 |
| | TOTAL | $ 38,080.00 |

4. I disagree with the majority opinion with respect to its disposition between Katz and Robison.

This court's mandate in *Robison I* ordered that Katz could recover special damages against Robison only. 94 N.M. at 320, 610 P.2d 201. Special damages were defined as those damages "which are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case." *Id.*

Pursuant to the mandate, the trial court ordered Robison and Campbell to pay the following damages:

The following are deemed consequential damages and must be shared by Robison with Campbell, even though they were included in the Katz-Campbell accounting:

| | | |
|---|---|---|
| a) | Sums of money borrowed by Katz to subsidize the mobile home park business. | 9,868.00 |
| b) | Other payments made on the mobile home park, difference between gross income and net income to Katz, Conclusions of Law Nos. 69, 70. | 44,829.00 |
| c) | Rental value of Los Alamos house from date of contract, July 29, 1976, to date of sale of Campbell, May, 1979 excluding that portion occupied by Katz. Fair rental value was $275 per month × 34 months = | 9,350.00 |
| | | 64,047.00 |
| d) | Prorated interest at 10% for 4 years, 9 months | 30,400.00 |
| | Total | $94,447.00 |

We further held in *Robison I* that punitive damages were available. Punitive damages are intended to punish a wrongdoer, and could be recovered against Robison only if Katz proved special damages, and that Robison acted recklessly.

The trial court, however, erred in assessing special damages against both Campbell and Robison. The mandate clearly ordered that these damages be assessed against Robison only. Furthermore, subsections (a), (b) and (c) were deemed special damages, yet these damages were part of the Katz-Campbell accounting. Even the broadest reading of our mandate could not countenance this dual allocation of these damages. Because the trial court erred in determining special damages, I would remand and order the court to conduct a hearing to determine whether the evidence adduced at the prior trials warrants Katz's recovery of special damages from Robison. Concomitant with the determination of special damages, the court must also consider whether, in light of any award of special damages, punitive damages can also be recovered.

As a result, I believe the cause should be reversed and remanded for proceedings as follows:

(A) I would reverse the trial court's judgment regarding attorney's fees, and order the court to deny the Sutin firm recovery of attorney's fees, and to dissolve the order permitting a charging lien.

(B) I would affirm in part and reverse in part the trial court's accounting between Katz and the Campbells and, on remand, would order that the court modify the accounting as I have provided herein.

(C) I would reverse the trial court's order granting special and punitive damages and, on remand, would order that the court conduct a hearing which is consistent with this opinion.

(D) Finally, I agree with the position of the majority reinstating Sam Campbell as a defendant, disposing of the Katz "cross-appeal" and in its decision on costs.