717 P.2d 586

H.E. (Bud) ROBISON, d/b/a Robison
Realty Company, Plaintiff-Appellee

v.

Beverly KATZ, Opal A. Campbell, and
Sam Q. Campbell,
Defendants-Appellees,

and

Beverly KATZ, Counterclaimant and
Cross-Claimant-Appellant,

v.

H.E. (Bud) ROBISON, d/b/a Robison
Realty Company,
Counterdefendant-Appellee,

and

Opal A. Campbell and Sam Q. Campbell,
Cross-Defendants-Appellees,

Opal A. CAMPBELL, Plaintiff-Appellee,

v.

Beverly KATZ, Defendant-Appellant.

No. 15730.

Supreme Court of New Mexico.

April 11, 1986.

As Amended on Denial of Rehearing
April 23, 1986.

Marchiondo & Berry, Charles G. Berry,
Charles A. Wyman, Albuquerque, for appellant.

Sutin, Thayer & Browne, Norman S.
Thayer, Frank Salazar, Albuquerque, for
defendant-appellee Katz.

Martin E. Threet, Albuquerque, for cross-
defendants-appellees Campbell.

Stephen D. Bass, Albuquerque, for coun-
terdefendant-appellee Robison Realty.

OPINION

SOSA, Senior Justice.

This case began in 1977 when Robison, a
real estate broker, brought a declaratory
judgment action to determine his liability,
if any, for misrepresentations made in con-
nection with the sale of the Green Valley
Mobile Home Park (Park) by defendants
Campbell to defendant-appellant Beverly
Katz (Katz). Three times the case came up
to the court of appeals. The only issue
now before this Court is whether the trial
court, after the remand, erred in assigning
all of the proceeds from the judgment
against Robison to the first law firm to
have represented Katz. We reverse, and
remand the matter to the trial court for an
equitable apportionment among the two
firms who jointly contributed to the judg-
ment in favor of Katz.

At the first trial, Katz was represented
by the firm of appellee, Sutin, Thayer and
Browne (Sutin). Katz counterclaimed for
rescission of the contract for sale of the
Park. The trial court determined that re-
scission was barred because Katz could not
restore the vendor Campbells to the *status*

*quo ante.* Instead, the court awarded damages to Katz with set-offs to Campbells. The net award to Katz came to $26,789.00 plus costs. In addition, the court granted to Sutin an attorney's charging lien on the proceeds of the judgment, in the sum of $49,099.26. This amount was subsequently amended to $61,270.06.

Katz appealed. Evidently the Sutin firm declined to represent Katz on appeal, which she was permitted to pursue *in forma pauperis.* One of the issues Katz raised was that the attorneys' fees granted in the charging lien were excessive. The court of appeals reversed the trial court and remanded to permit rescission and an accounting between the parties, *Robison v. Katz,* 94 N.M. 314, 610 P.2d 201 (Ct.App.), *cert. denied* 94 N.M. 675, 615 P.2d 992 (1980) (*Robison I*). The remand also directed the trial court to hear evidence of any special damages resulting from Katz's reliance on Robison's misrepresentations. If Katz could prove special damages, the court of appeals held that she could also claim punitive damages against Robison for breach of his fiduciary duty as her broker. Finally, the court remanded for a hearing on Katz's claim that the fees charged by Sutin were excessive.

At the second trial, Katz was represented by the firm of appellant, Marchiondo & Berry (Marchiondo). The court granted rescission and further found that Katz had proved special medical damages against Robison in the amount of $219.13. On this foundation, the court also awarded punitive damages of $10,000 (the amount of Robison's brokerage commission). From the judgment in her favor Katz was ordered to pay the sum of $3,028.74 for the cost of the transcript on appeal, and $1,286.97 for reimbursement of the court clerk. Finally, Sutin was awarded a charging lien on the proceeds of the judgment, in the amount of $25,000.

Both Katz and Sutin appealed. Katz attacked the validity of the charging lien as applied to the second judgment; Sutin contended that the lien was not only valid, but also that the trial court abused its discretion in awarding only $25,000, when its fee was in excess of $61,000. In addition, both Robison and Campbell challenged the terms and calculations of the judgment on the contract issue. Finally, Robison and Katz both sought review of the punitive damages award: Robison wanting it decreased, Katz wanting it increased.

In *Robison v. Campbell,* 99 N.M. 579, 661 P.2d 479 (Ct.App.) *cert. denied,* 99 N.M. 578, 661 P.2d 478 (1983) (*Robison II*), the court of appeals vacated the award of punitive damages in light of its opinion that the contract damages had been improperly calculated. Significantly, there was no challenge to the finding of $219.13 in actual medical expenses as special damages for Katz against Robison.

As for the charging lien, the court of appeals enunciated the underlying equitable principles in upholding the validity of the award. *See Northern Pueblos Enterprises v. Montgomery,* 98 N.M. 47, 644 P.2d 1036 (1982). The court clearly held that Katz' relief of rescission granted at the second trial was based upon evidence introduced by Sutin at the first trial. The court went on to hold, however, that:

> The rescission ultimately obtained by Katz involved attorneys other than the Sutin firm in the prior appeal and the trial after remand. The trial court could properly consider the part palyed by the Sutin firm in the ultimate recovery and determine that "equitable relief for a reasonable fee" should be the $25,000.00. *See Northern Pueblos, supra.* There was no abuse of discretion.

*Robison II,* 99 N.M. at 585, 661 P.2d at 485.

Again the cause was remanded. Again the trial court awarded Katz $10,000 in punitive damages against Robison. Again Robison appealed, arguing that the punitive damage award was so disproportionate to the $219.13 in actual damages as to plainly manifest passion and prejudice, citing *Galindo v. Western States Collection*

*Company,* 82 N.M. 149, 477 P.2d 325 (Ct. App.1970).

The court of appeals affirmed the judgment. *Robison v. Campbell,* 101 N.M. 393, 683 P.2d 510 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984) (*Robison III* ). Specifically, the court upheld the punitive damage award, under the circumstances of the case and in light of the relationship between the parties, as "based on reason and justice." *Robison III,* 101 N.M. at 397, 683 P.2d at 514.

After the third appeal, Robison paid into the registry of the trial court the amount of the judgment he owed to Katz on September 24, 1984. The trial court held a hearing to determine the priority of attorneys' charging liens between Sutin and Marchiondo. By letter decision of October 12, 1984, confirmed in an order issued on November 7, 1984, the court awarded the entire fund to Sutin, after subtracting the reimbursement to the court for the costs of the first appeal. From this order Marchiondo appeals.

■ Both parties agree that an attorney's charging lien "has its origin in the common law, and is governed by equitable principles." *Northern Pueblos,* 98 N.M. at 49, 644 P.2d at 1038. It is an attorney's right "to recover his fees and money expended on behalf of his client *from a fund recovered by his efforts.*" *Prichard v. Fulmer,* 22 N.M. 134, 140, 159 P.39, 41 (1916) (emphasis added).

Sutin argues here, as below, that the validity and priority of its lien were established by the prior appellate decisions in *Robison I* and *Robison II.* The court of appeals was never asked to rule on Marchiondo's charging lien. (Indeed it is not clear yet how much Marchiondo's lien is for; presumably it exceeds $10,000.) That court did conclude, however, in reducing the amount of Sutin's lien, that the judgment in favor of Katz resulted in part from the efforts of attorneys other than Sutin.

Nonetheless, Sutin contends that its lien has priority because:

The lien of an attorney for services rendered in an action relates back to, and takes effect from, the time of the commencement of the services, when it attaches to a judgment, it is superior to the claim of a creditor in whose favor execution has been levied, or to a subsequent attachment, garnishment, or trustee process, or other liens on the money or property involved, subsequent in point of time.

*Forrest Currell Lumber Company v. Thomas,* 82 N.M. 789, 790, 487 P.2d 491, 492 (1971) (quoting *Hanna Paint Manufacturing Company v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962)). Obviously, Marchiondo's service commenced subsequently to Sutin's, and therefore would appear to be an inferior claim.

Sutin would thus have this Court uphold the trial court on the basis of "first in time, first in right." Ordinarily, such a conclusion would be inevitable, if Sutin's lien were challenged by anyone else. But priority in time is not dispositive of this dispute, which raises the issue of *inter se* proration between two attorneys representing the same client in the same matter.

■ Sutin terminated its representation before the punitive damages were awarded. Marchiondo was responsible for proving the prerequisite special damages. Indeed, Marchiondo asserts that its efforts alone resulted in the punitive damages awarded, whereas Sutin "slept on its rights" by declining to pursue the appeal. In fact, the award resulted from the combined efforts of both firms, each of which was necessary but not sufficient. Balancing the equities, this Court concludes that both firms should share in the award; it would be unfair for either to reap the fruits of the other's labors. Cooperation ought to be the norm governing the conduct of attorneys representing the same client. We observe the sad fact that the attorney's fees claimed here far exceed, and thus consume the total amount to which the client is entitled.

On remand, the trial court needs first to obtain an accounting from Marchiondo of the amount of fees and costs on which its lien is based. Then, just as Sutin's lien was reduced from more than $61,000 to $25,000, Marchiondo's lien can be similarly scaled down. The court can weigh this reduced amount against the $25,000 claimed by Sutin. Considering all these equitable factors, the court can finally determine for each firm its proportional share of the fund, thus granting both firms "equitable relief for a reasonable fee." *Northern Pueblos*, 98 N.M. at 49, 644 P.2d at 1038.

The judgment of the trial court is reversed and the matter remanded for proceedings consistent with this Opinion.

IT IS SO ORDERED.

RIORDAN, C.J., and STOWERS, J., concur.