769 So.2d 399 (2000)
Amir AFRAZEH, Appellant,
v.
MIAMI ELEVATOR COMPANY OF AMERICA, et al., Appellees.
No. 3D99-2697.
District Court of Appeal of Florida, Third District.
August 9, 2000.
Rehearing Denied October 18, 2000.
*400 McKenna & Obront, and Curt Obront, Coconut Grove, for appellant.
Klemick and Gampel, and Henry Smyler, Miami, for appellees.
Before JORGENSON, GERSTEN, and RAMIREZ, JJ.
PER CURIAM.
Amir Afrazeh ("Afrazeh") appeals an order granting attorney's fees to Klemick and Gampel, P.A. ("Klemick") and Henry Smyler ("Smyler") for representation in the underlying action. We affirm in part and reverse in part.
Afrazeh sued for injuries in an elevator accident. After Afrazeh's initial attorney withdrew, Afrazeh hired Klemick. Pending litigation, Klemick received an offer of settlement for $157,000. Afrazeh, meanwhile, rejected the offer and terminated Klemick. As a result, Klemick filed a charging lien against Afrazeh, while Afrazeh hired a third attorney. After two *401 years without obtaining a resolution, the third attorney withdrew and Afrazeh retained a fourth attorney, Smyler.
Under a 40% contingency agreement with Afrazeh, Smyler obtained a settlement offer of $130,000 which was accepted. Due to a worker's compensation lien and Klemick's charging lien, Smyler placed the proceeds of the settlement in a trust account. Thereafter, Smyler, without Afrazeh's permission, withdrew $35,000 from this account for personal use. After making this withdrawal, Smyler claimed a conflict of interest and withdrew from the case.
At a hearing on the distribution of the settlement proceeds, Afrazeh claimed that Smyler informed him that the 40% contingency fee agreement would encompass Klemick's lien. Afrazeh further claimed that Smyler knew that the 40% contingency fee was to be divided between Smyler and Klemick. As proof, Afrazeh produced a letter from Smyler stating that Afrazeh would be receiving his 60% of the settlement shortly thereafter.
Afrazeh also argued that the client's closing statement made no reference to Klemick's charging lien in violation of the Rules of Professional Conduct. Therefore, Afrazeh asserted that: (1) he should only have to pay a total of 40% of the settlement to be divided between both Smyler and Klemick, or, (2) Smyler should not be entitled to any fees because Smyler violated the Rules of Professional Conduct by paying himself $35,000 from the trust fund without Afrazeh's permission.
Thereafter, the court awarded Klemick a quantum meruit fee of $17,745 ($325 per hour for 51 attorney hours and $90 per hour for 13 paralegal hours) and costs of $897.07. The court enhanced the fee by $7,255, for a total of $25,000 because Klemick obtained an offer that was $27,500 greater than what was eventually accepted. The court also awarded Smyler $17,000 in contingency fees after deducting the $35,000 Smyler had previously taken from the trust account. Afrazeh appeals this fee award.
In reviewing an award of attorney's fees, an appellate court will not disturb the lower court's decision absent a clear abuse of discretion. See DiStefano Construction, Inc. v. Fidelity and Deposit Co. of Maryland, 597 So.2d 248 (Fla.1992). Further, "an attorney employed under a valid contract who is discharged without cause before the contingency has occurred or before the client's matters have concluded can recover only the reasonable value of his services rendered prior to discharge, limited by the maximum contract fee." Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982). Upon the occurrence of the contingency, the trial court should consider the totality of circumstances in computing the reasonable value of the discharged attorney's services. See Doremus v. Florida Energy Systems of South Florida, Inc., 676 So.2d 444 (Fla. 4th DCA 1996); Law Offices of Theodore Goldberg v. Fazio, Dawson, DiSalvo, Cannon, Abers & Podrecca, 659 So.2d 1200 (Fla. 3d DCA 1995).
Here, Klemick was able to obtain a settlement offer of $157,000 prior to being discharged without cause. Klemick filed a charging lien against any future recovery and waited for Afrezah to collect on his claim. Once Afrazeh settled the case, Klemick was entitled to enforce the charging lien. See Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982). The lower court heard expert testimony on the reasonableness of the fee and determined that it was appropriate to award Klemick an additional $7,255 because Klemick obtained a settlement offer $27,500 greater than what Smyler obtained. Under the totality of the circumstances, we find that the lower court did not abuse its discretion in awarding Klemick these fees. See Rosenberg v. Levin, 409 So.2d at 1022; Doremus v. Florida Energy Systems of South Florida, Inc., 676 So.2d at 446.
*402 On the other hand, we find the lower court did abuse its discretion in its award of fees to Smyler because no competent substantial evidence supported the award. Smyler contends that he should be entitled to his full fee and Afrazeh should be responsible for Klemick's fee citing Adams v. Fisher, 390 So.2d 1248 (Fla. 1st DCA 1980).
In Adams, the court held that a client who discharges an attorney without cause and then recovers through the services of a successor attorney is responsible to the successor attorney for his full fee and to the former attorney in quantum meruit. The court stated:
Such a rule insures the right of a client to discharge an attorney at any time with or without cause, but it also makes the client responsible for his actions. A client may end up paying fees in excess of the original contingent fee, once to the discharged attorney in quantum meruit and again to the substituted attorney on a new contingent fee contract."
Adams v. Fisher, 390 So.2d at 1251. While this may be true in a case like Adams where the trial judge presided over all matters, was intimately aware of all work undertaken by the attorneys, and based his decision on facts contained in the record, we do not believe Adams applies here for two reasons.
First, the Adams court found it significant that the trial court had thoroughly reviewed the record before awarding the fees. Yet here, the trial judge did not have and, therefore, could not review the record. This is significant because it appears from the order that the lower court believed that three of Afrazeh's four attorneys were discharged by Afrazeh without cause. In fact, this Court's review of the record indicates that only Klemick was discharged and the other three attorneys withdrew. If the lower court had the benefit of these facts, it may have reached a different result.
Second, the only record evidence regarding how much Afrazeh agreed to pay Smyler was Afrazeh's statement of a 40% split between both Smyler and Klemick. Further, Smyler's letter confirmed this fact. Smyler, meanwhile, testified that he could not remember what he stated to Afrazeh regarding his fee and he was unable to present any evidence to rebut Afrazeh's testimony.[1] Under these facts, the amount of fees awarded to Smyler was not supported by competent, substantial evidence.
This Court has held that where an award of attorney's fees is determined to be so excessive as to be beyond the bounds of reasonable discretion, an appellate court may reverse the award and remand to the trial court to reconsider or amend the judgment by reducing the fee amount to one reasonable and proper under the circumstances of the case. See Donald Zuckerman P.A. v. Alex Hofrichter, P.A., 676 So.2d 41 (Fla. 3d DCA 1996); Dade Cty. v. Oolite Rock Co., 348 So.2d 902 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 133 (Fla.1978). Due to a lack of competent, substantial evidence to support the full award of attorney's fees to Smyler, we reduce Smyler's compensation to $27,000.[2]See Dade Cty. v. Oolite Rock Co., 348 So.2d at 905.
We write further to express our concerns with the appearance that Smyler has committed numerous violations of the Rules of Professional Conduct Regulating the Florida Bar. Rule 4-1.5(f), requires that a contingency fee agreement as well as a closing statement be signed by both *403 the client and the attorney. Here, Smyler failed to sign the contingency fee agreement and failed to have Afrazeh sign the closing statement.
In addition, it appears that Smyler may have violated Rule 4-1.4 which requires an attorney to keep the client informed of the status of the representation. The comment to Rule 4-1.4 states that an attorney: "may not withhold information to serve the lawyer's own interest or convenience." Smyler's letter to Afrazeh which indicated that 60% of the settlement would be paid to Afrazeh shortly thereafter, in light of Smyler's admission that he knew this information to be false, could be interpreted as an attempt to deceive the client.
Most importantly, we are deeply troubled by Smyler's removal of $35,000 from his trust fund for personal use as well as his letter to Afrazeh which stated that Afrazeh would be receiving 60% of the settlement. The Florida Supreme Court stated 40 years ago:
Few breaches of ethics are as serious as the commingling of a client's funds and the use thereof for the lawyer's private purposes. The funds of a client in the custody of his lawyer should be guarded and protected as securely as if the same were in the custody of the community's strongest financial institution. The relationship between a lawyer and a client is of the highest degree of integrity and fidelity. In handling his client's money the lawyer should guard it with much greater diligence and caution than he does his own.
State ex rel. The Florida Bar v. Ruskin, 126 So.2d 142 (Fla.1961). These principles are hallmarks of the legal profession and apply more so today with the imprimatur of 40 years of Florida Supreme Court precedent. Ergo, in order for our profession to flourish on high ethical principles, a client must be able to trust that an attorney will guard the client's funds vigorously.
Accordingly, we affirm the award of fees to Klemick, reverse the award of fees to Smyler, and remand with instructions to limit the total attorney's fees to no more than 40% of the recovery. In light of this opinion, the trial court may consider whether Smyler committed any violations of the Rules Regulating the Florida Bar in entering any order on remand. Meanwhile, this opinion serves as notice to the Florida Bar to act as it deems just and proper.
Affirmed in part, reversed in part, and remanded with instructions.
NOTES
[1] Smyler admitted that he knew that Afrazeh would not be receiving the full 60% of the settlement due to the charging lien filed by Klemick. However, Smyler stated that he told Afrazeh that the 60% would be dispersed to him because Afrazeh was, allegedly, a difficult client who needed to be appeased.
[2] This represents the difference between 40% of the settlement ($52,000) and Klemick's fee of $25,000.