2006-NMCA-120

142 P.3d 983

**Otilia RANGEL, Plaintiff–Appellee,**

**v.**

**SAVE MART, INC., Defendant,**

**and**

**The Lovett Law Firm, Appellant.**

**No. 24,769.**

Court of Appeals of New Mexico.

Aug. 11, 2006.

As Revised Sept. 25, 2006.

Kyle W. Gesswein, Las Cruces, NM, for Appellee.

Bowles & Crow, Jason Bowles, B.J. Crow, Albuquerque, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} In this case, we determine whether the district court abused its discretion in awarding sanctions under Rule 1–011 NMRA, based on the filing of an attorney charging lien. Because we determine that the appellant's assertion of the charging lien was colorable as a matter of law, we hold that the district court abused its discretion in imposing sanctions, and we reverse the order imposing sanctions.

## BACKGROUND

{2} This dispute originated as a slip-and-fall case brought by Plaintiff, Otilia Rangel, against Save Mart. Appellant, the Lovett Law Firm (Lovett), represented Plaintiff. On the day after she sustained her injuries, Plaintiff met with staff at Lovett and signed a contingency fee contract, which stated that Lovett would be entitled to one-third of any monies recovered before the filing of a lawsuit and 40% of any monies recovered after the filing of a lawsuit. About a week later, Lovett sent a letter of representation to Save Mart's insurance company. The insurance company responded with a letter denying fault, but stating as follows: "However, there is $5,000 in medical payment coverage that can be applied to this incident. The coverage will provide payment for any out of pocket expense related to this incident. . . . Please submit documentation for any medical expense that you wish us to consider." Lovett sent Plaintiff's medical bills, totaling $5,657, to the insurance company, which sent Lovett a check for $5,000, payable to Lovett and Plaintiff. Lovett used some of this money to pay Plaintiff's outstanding medical bills, and he apparently retained approximately one-third of this $5,000 pursuant to the contingency fee agreement with Plaintiff.

{3} Approximately a month later, in March of 2002, Lovett filed suit on behalf of Plaintiff. It appears from the record that some discovery took place after the filing of the complaint. Lovett answered interrogatories and participated in a deposition of Plaintiff. Lovett also participated in a formal mediation. In September and October of 2002, Lovett filed motions to withdraw as counsel for Plaintiff. The motions were granted on October 2, 2002.

{4} The district court found that (1) while Lovett was representing Plaintiff, Save Mart made a settlement offer of $15,000 and (2) subsequent to Lovett's representation, Save Mart made a settlement offer of $18,000. It appears that Plaintiff rejected the $15,000 offer obtained by Lovett, discharged Lovett, and then a short time later accepted the $18,000 settlement offer. There is no indication in the district court's findings or in the record that Lovett was discharged for cause.

{5} Two days after withdrawing as Plaintiff's counsel, Lovett filed a notice of charging lien. That document states in full as follows: "COMES NOW Lovett Law Firm and respectfully notifies the Court and counsel that it is asserting an attorney charging lien in the above captioned matter. Lovett Law Firm requests that no funds be dis-

bursed until [a] hearing is held on recovery of monies owed to the firm." Lovett later argued that it was entitled to a charging lien for its full contingency fee.

{6} Plaintiff retained new counsel and filed a motion to strike the lien and to recover the portion of the $5,000 obtained for medical bills that Lovett had retained. The district court eventually granted the motion and struck the lien. In striking the lien, the district court made the following findings, which are substantially unchallenged on appeal:

13. Other than the $5,000.00 med pay payment made by the insurance company representing Save Mart, Attorney Lovett did not collect any funds during his representation of [Plaintiff].

. . . .

15. Regarding the claim of lien, Attorney Lovett is relying on the [contingency fee] contract for his claim.

16. Attorney Lovett bases his claim upon the contract[,] not on time/work.

. . . .

29. Under Save Mart's insurance policy, they would not and did not contest medical payments.

30. Save Mart's requirements to pay medical insurance payments were solely based on presentation of medical bills and was done without regard to fault.

The district court ruled that a charging lien can be asserted only where there is a "fund recovered by the attorney." The court determined that the only money recovered by Lovett was the $5,000 obtained to pay medical bills and that such money did not qualify as "recovery" for purposes of a charging lien. The court also entered findings indicating that a contingency fee on medical payments is not a reasonable fee.

{7} Prior to the district court's striking the lien, Plaintiff filed a motion for sanctions under Rule 1–011. Plaintiff argued that sanctions were appropriate because (1) the claim of lien was unfounded, since Lovett never recovered any money on behalf of Plaintiff, and (2) Lovett knowingly took an inconsistent position in a similar case. Plaintiff requested that the court impose sanctions

in the form of the attorney fees incurred in opposing the lien. The court entered an order granting the motion and awarding Plaintiff the requested fees. The court did not enter findings of fact or conclusions of law with regard to the sanctions.

{8} On appeal, Lovett contends that there was no sanctionable conduct in this case. Lovett does not contest the propriety of the district court's order striking the lien. Accordingly, we examine only whether Lovett's conduct constituted a violation of Rule 1–011, and we do not decide whether the district court properly denied the lien.

**DISCUSSION**

{9} We begin by setting forth the requirements for a Rule 1–011 violation and the appropriate standard of review. We then examine the substantive requirements for an attorney charging lien, and we address whether Lovett's filing of the charging lien in this case violated Rule 1–011. Finally, we address several additional arguments made by Plaintiff.

**1. The Rule 1–011 Standard**

{10} The pertinent provision of Rule 1–011 states the following: "The signature of an attorney . . . constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief there is good ground to support it; and that it is not interposed for delay." In this case, there is no allegation that Lovett failed to read any pleadings or that the charging lien was filed in order to cause delay or for some other improper purpose. Plaintiff did argue that courts need to control attorneys who prejudice their clients by filing unfounded liens in order to tie up the clients' files. However, (1) the district court did not make any findings or comments along those lines, and (2) there is no evidence that such occurred in this case. Accordingly, the only question is whether "to the best of [Lovett's] knowledge, information and belief, there [was] good ground to support" the charging lien. *See* Rule 1–011.

{11} New Mexico courts have interpreted the "good ground" provision of

Rule 1–011 to allow for sanctions where a pleading does not assert a colorable claim or, in other words, "is not warranted by existing law or a reasonable argument for its extension." *Rivera v. Brazos Lodge Corp.*, 111 N.M. 670, 674, 808 P.2d 955, 959 (1991). The "good ground" provision is measured by a subjective standard and is appropriate "only in those rare cases in which an attorney deliberately presses an unfounded claim or defense." *Id.* (internal quotation marks and citations omitted). "Any violation depends on what the attorney ... knew and believed at the relevant time and involves the question of whether the ... attorney was aware that a particular pleading should not have been brought." *Id.* at 675, 808 P.2d at 960. For Rule 1–011 sanctions to be appropriate, there must be "subjective evidence that a willful violation has occurred." *Lowe v. Bloom*, 112 N.M. 203, 204, 813 P.2d 480, 481 (1991).

{12} Generally, appellate courts review a district court's imposition of Rule 1–011 sanctions for an abuse of discretion. *Rivera*, 111 N.M. at 674–75, 808 P.2d at 959–60. "However, a district court necessarily would abuse its discretion if it based its ruling on an erroneous view of the law[.]" *Id.* at 675, 808 P.2d at 960. We have reviewed *Hughes v. City of Fort Collins*, 926 F.2d 986 (10th Cir.1991), cited by Plaintiff, but we note that even that case holds that a district court's Rule 1–011 decision is an abuse of discretion where the court "base[s] its ruling on an erroneous view of the law." *Id.* at 988 (internal quotation marks and citation omitted).

## 2. The Substantive Standards Governing an Attorney Charging Lien and Whether the Charging Lien Violated Rule 1–011

{13} There are four elements to an attorney charging lien in New Mexico: (1) there must be a valid express or implied contract between the attorney and the client, (2) there must be "a fund recovered by the attorney," (3) notice of intent to assert a lien must be given, and (4) there must be a timely assertion of the lien. *Sowder v. Sowder*, 1999–NMCA–058, ¶¶ 10–14, 127 N.M. 114,

977 P.2d 1034 (internal quotation marks and citations omitted). The charging lien is a common-law right that is equitable in nature. *N. Pueblos Enters. v. Montgomery*, 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982). We have defined a charging lien as

> the right of an attorney or solicitor to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same.

*Sowder*, 1999–NMCA–058, ¶ 9, 127 N.M. 114, 977 P.2d 1034 (internal quotation marks and citation omitted).

{14} At the outset of our analysis, we reiterate that the merits of the charging lien are not before us. Accordingly, we explicitly do not decide whether Lovett was entitled to the lien. The only question we must decide is whether the lien was so non-meritorious that Lovett subjectively and willfully violated Rule 1–011 by filing the lien despite being "aware that [it] should not have been brought." *Rivera*, 111 N.M. at 675, 808 P.2d at 960.

{15} In this case, the only disputed element of the charging lien is whether there was "a fund recovered by the attorney." *See Sowder*, 1999–NMCA–058, ¶ 11, 127 N.M. 114, 977 P.2d 1034 (internal quotation marks and citations omitted). Plaintiff argues that (1) the $5,000 earmarked to pay medical bills cannot fulfill the requirement of a recovered fund and (2) with the exception of that $5,000, it is undisputed that Lovett did not actually "recover" any money on behalf of Plaintiff because Plaintiff fired Lovett before she accepted the settlement. We do not address Plaintiff's first argument regarding the medical expense payment because we determine that Lovett participated in Plaintiff's ultimate recovery to a sufficient degree to make the assertion of a charging lien colorable and thus not in violation of Rule 1–011.

{16} We agree with Plaintiff that, on the surface, the situation presented here (where an attorney works on a case but is discharged before the client either wins a judg-

ment or accepts a settlement offer) would seem insufficient to satisfy the requirement stated in *Sowder* that there be "a fund recovered by the attorney." 1999–NMCA–058, ¶ 11, 127 N.M. 114, 977 P.2d 1034 (internal quotation marks and citations omitted). However, we think Plaintiff reads that statement too narrowly. While most of our cases dealing with charging liens have not addressed the recovery element, some of those cases contain language supporting the proposition that it is enough for the attorney to significantly contribute to the ultimate recovery even if he or she is not the attorney of record at the time that funds are actually obtained. *See Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.*, 101 N.M. 656, 656, 687 P.2d 91, 91 (1984) (referring to "a fund recovered by [the attorney's] efforts" (internal quotation marks and citations omitted)); *Prichard v. Fulmer*, 22 N.M. 134, 140, 159 P. 39, 40–41 (1916) (same); *Cherpelis v. Cherpelis*, 1998–NMCA–079, ¶ 8, 125 N.M. 248, 959 P.2d 973 (same).

{17} We also find *Robison v. Campbell*, 99 N.M. 579, 661 P.2d 479 (Ct.App.1983), to be on point. In that case, the Sutin firm represented a client, Katz, who had sued for recission of a real estate contract. *Id.* at 584, 661 P.2d at 484. The trial court determined that Katz was not entitled to recission, but awarded her damages. *Id.* On appeal, this Court reversed the damage award, but instructed the trial court to allow Katz to rescind the contract. *Id.* at 582, 584, 661 P.2d at 482, 484. On remand, Katz, who was no longer represented by the Sutin firm, won a judgment based on recission. *Id.* The trial court also awarded the Sutin firm a charging lien. *Id.* at 582, 661 P.2d at 482.

{18} Katz appealed to this Court again, arguing that the Sutin firm had no claim to a charging lien because the first judgment, to which the lien had attached, was vacated and the Sutin firm had not participated in the second trial that resulted in judgment for Katz. *Id.* at 584, 661 P.2d at 484. We held that the charging lien, which was supported by the services rendered in the first trial, properly attached to the second judgment. *Id.* We noted that in the second trial, Katz had relied on evidence introduced by the Sutin firm at the first trial and that Katz ultimately prevailed on a theory of recission, which was argued by Sutin at the first trial but was erroneously rejected by the trial court. *Id.* Despite the fact that the Sutin firm took no part in the second trial, which was the only proceeding that ultimately resulted in judgment for Katz, we stated that "[t]he contention that the Sutin firm did not contribute to the judgment entered after trial upon remand is frivolous." *Id.; see also Robison v. Katz*, 104 N.M. 133, 135, 717 P.2d 586, 588 (1986) (involving the same case and addressing whether the Sutin firm's lien took priority over the lien of Katz's subsequent attorneys; holding that "the award resulted from the combined efforts of both firms, each of which was necessary but not sufficient[, and b]alancing the equities, this Court concludes that both firms should share in the award; it would be unfair for either to reap the fruits of the other's labors").

{19} We also take guidance from an unpublished Tenth Circuit case that relied on New Mexico law and specifically on the *Robison* Supreme Court and Court of Appeals cases. *See Albuquerque Technical Vocational Inst. v. Gen. Meters Corp.*, 17 F. App'x 870, 2001 WL 951348 (10th Cir.2001) (unpublished). In that case, the Hatch firm represented General Meters in a suit brought against it by the Albuquerque Technical Vocational Institute (TVI) concerning a computer system. *Id.* at 871. The Hatch firm conducted discovery and, more than a year after the complaint was filed, succeeded in obtaining leave to assert a counterclaim against TVI. *See id.* at 872. Shortly thereafter, the Hatch firm withdrew from the case and General Meters retained new counsel. *Id.* The Hatch firm then filed a charging lien. *Id.* at 873. After a bench trial, General Meters prevailed with regard to all of TVI's claims, and it also prevailed on its counterclaim. *Id.* General Meters disputed the charging lien, arguing that the Hatch firm had failed to satisfy the recovery requirement of New Mexico's charging lien cases. *Id.*

{20} The Tenth Circuit relied on *Robison*, which it interpreted as follows: "[A] lawyer is not prevented from asserting a lien against

a judgment obtained by a former client, even though the lawyer was not involved throughout the litigation and other attorneys' efforts contributed to the recovery." *General Meters*, 17 F. App'x at 876. The circuit court held that the Hatch firm's efforts in the case were "enough to satisfy the [New Mexico] requirement that the fund recovered be the result of the attorney's effort." *Id.* The circuit court noted that the Hatch firm had worked on the case for over a year, that it had filed the counterclaim, and that some of the work entailed in defending against TVI's claims also related to the counterclaim. *Id.* The circuit court concluded that the evidence in the case "clearly established that the efforts of [the Hatch firm] contributed to the counterclaim judgment." *Id.* at 877.

■ {21} We acknowledge that the facts of this case are somewhat distinguishable from the facts in *Robison* and *General Meters*. We do not deem it important that this case ended in settlement whereas those cases ended in judgment. However, in both *Robison* and *General Meters*, it was undisputed that the initial attorneys put a great deal of work into the cases before being discharged. We agree with Plaintiff that Lovett does not appear to have put a comparable amount of work into this case. Nonetheless, we think that *Robison* and *General Meters* can be fairly interpreted to support the proposition that where an attorney makes significant contributions to a case before being discharged, he or she is entitled to claim a charging lien.

{22} Plaintiff argues that *Robison* and *General Meters* are not on point because they involved "situations where the attorney produced evidence of the actual services performed unlike Mr. Lovett in the case at bar." We disagree that there is no evidence in the record of Lovett's working on the case. The following facts are undisputed: (1) Lovett filed a complaint on behalf of Plaintiff; (2) Lovett participated in initial discovery; (3) Lovett had contact with Plaintiff on at least seven occasions, some in person and some via telephone; (4) Lovett wrote several letters to Save Mart's insurance company on behalf of Plaintiff; (5) Lovett attended a mediation on behalf of Plaintiff; and (6) Lovett obtained a settlement offer of $15,000 for Plaintiff. It also appears from the record, although the appellate briefing is not clear on the issue of timing, that Plaintiff discharged Lovett and then, about a week later, settled without an attorney for $18,000, only $3,000 more than the offer obtained by Lovett.

{23} Under these circumstances, and in view of *Robison* and *General Meters*, we cannot say that Lovett's claim for a charging lien was so non-meritorious as to constitute a violation of Rule 1–011. *See Lowe*, 112 N.M. at 205, 813 P.2d at 482 (holding that the district court abused its discretion in imposing Rule 1–011 sanctions where a pleading's chances of success constituted "a question on which reasonable lawyers and judges could differ").

{24} Our holding is also supported by cases from several other jurisdictions that have explicitly allowed charging liens in circumstances similar to those present in this case. *See, e.g., Afrazeh v. Miami Elevator Co. of Am.*, 769 So.2d 399, 400–01 (Fla.Dist. Ct.App.2000) (holding that where an attorney was fired without cause after obtaining a settlement offer that the client declined, that attorney was entitled to enforce a charging lien against a settlement procured by a new attorney); *Ambrose v. Detroit Edison Co.*, 65 Mich.App. 484, 237 N.W.2d 520, 522 (1975) (holding that attorneys had a valid charging lien where they withdrew for good cause after obtaining a settlement offer that the client rejected, and the client later accepted a "nearly identical" offer; stating that "[t]he law creates a lien of an attorney upon the judgment or fund resulting from his services ... [, and] where an attorney is justified in refusing to continue in a case, he does not forfeit his lien for services already rendered" (internal quotation marks and citation omitted)); *cf. Klein v. Eubank*, 87 N.Y.2d 459, 640 N.Y.S.2d 443, 663 N.E.2d 599, 600 (1996) ("[W]e conclude that an attorney need not be counsel of record at the time the judgment or settlement fund is created in order to be entitled to [a lien under New York's charging lien statute].... [A]n attorney's participation in the proceeding *at one point* as counsel of record is a sufficient predicate for invoking the statute's protection[.]").

{25} We recognize that the standard of review for an order imposing Rule 1–011 sanctions is generally very deferential. However, as we noted above, a district court necessarily abuses its discretion when it "base[s] its ruling on an erroneous view of the law." *Rivera*, 111 N.M. at 675, 808 P.2d at 960. In this case, the district court appears to have based its decision on the erroneous view that Lovett did not have a colorable claim for an attorney charging lien under New Mexico law. Having determined that decision to be incorrect as a matter of law, we reverse the order imposing sanctions.

{26} We also note that reversal appears to be appropriate in this case because the district court's oral ruling on the motion for sanctions indicates that the court applied the wrong Rule 1–011 standard. We normally do not predicate error on oral remarks made by the district court. *See Ledbetter v. Webb*, 103 N.M. 597, 603, 711 P.2d 874, 880 (1985). However, when sanctions are involved, a district court is generally required to enter findings. *See Rest. Mgmt. Co. v. Kidde–Fenwal, Inc.*, 1999–NMCA–101, ¶¶ 22–23, 127 N.M. 708, 986 P.2d 504 (discussing the district court's inherent authority to impose sanctions for spoliation of evidence and holding that the district court must enter findings of fact before imposing such sanctions). Because the district court in this case did not enter written findings, we will consider the court's oral comments. In granting the motion, the court stated: "On the other hand, I agree with [Plaintiff's attorney] about the lien. It *should have been clear* that there was no lien that should have been filed. To that extent, I agree the motion should be granted, which leads to the sanctions." (Emphasis added.) As we have detailed above, New Mexico uses a subjective standard for Rule 1–011. *See Rivera*, 111 N.M. at 674, 808 P.2d at 959 (holding that sanctions are appropriate "only in those rare cases in which an attorney deliberately presses an unfounded claim or defense" (internal quotation marks and citations omitted)). The district court's comment that it "should have been clear" that the lien was inappropriate strongly indicates that the court erroneously applied an objective Rule 1–011 standard.

We also note that, with the exception of Plaintiff's assertion that Lovett knowingly advanced conflicting positions in two different cases (which we address below), the record is devoid of any indication that Lovett did anything to deliberately or willfully press an unfounded claim or that Lovett otherwise attempted to improperly circumvent the rules. Nor did the district court give any indication that it found willfulness in this case. Under these circumstances, the district court's oral remarks provide further support for our decision to reverse the order imposing sanctions. We now proceed to address Plaintiff's remaining arguments.

### 3. Lovett Did Not Violate Rule 1–011 by Filing a Pleading That Requested an Unreasonable Fee

{27} Plaintiff next argues that, based on the amount of work that Lovett performed in this case, the contingency fee requested in connection with the lien was an unreasonable fee. Without citation to any authority concerning Rule 1–011, Plaintiff appears to argue that merely filing a pleading that requests an unreasonable fee could be grounds for Rule 1–011 sanctions. We assume without deciding that filing such a pleading could constitute a violation of Rule 1–011, but we hold that the contingency fee claimed by Lovett in this case was not so unreasonable as to constitute a violation of Rule 1–011. We note that there is no indication in the record that the district court actually ruled on this basis. However, because the unreasonable fee issue was argued below, and because we can affirm the district court if it was right for any reason, we will briefly address Plaintiff's argument. *See Meiboom v. Watson*, 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (noting that we will affirm if the trial court was right for any reason, as long as it would not be unfair to do so).

{28} We first note that, as with our discussion of "recovery" in connection with a charging lien, we need not decide whether the fees requested by Lovett were actually reasonable. We are only required to address whether they were so unreasonable as to constitute a violation of Rule 1–011, and we

express no opinion on whether Lovett was actually entitled to collect the full contingency fee.

{29} Plaintiff appears to argue that the contingency fee was unreasonable because (1) all Lovett did was to collect the $5,000 that was earmarked for payment of medical expenses and (2) the collection of that money entailed little work and no risk. We reject this argument. As we held above, Lovett was entitled to claim a charging lien based on the work performed in this case (including filing a compliant, sending letters, conducting discovery, meeting with Plaintiff, and negotiating on her behalf), not just on the money actually recovered. Here, we similarly think that the question of the reasonableness of the fee claimed by Lovett must be answered by taking into consideration all the work performed in the case, not just the work involved in securing the medical payment.

{30} We disagree with Plaintiff that the contingency fee claimed by Lovett was so unreasonable as to constitute a violation of Rule 1–011. It is undisputed that Lovett and Plaintiff entered into a contract whereby Lovett was to receive one-third of all funds obtained before the filing of a lawsuit and 40% of all funds obtained after the filing of a lawsuit. The general rule is that "courts should enforce contingency fee contracts as made." *Lozano v. GTE Lenkurt, Inc.,* 122 N.M. 103, 109, 920 P.2d 1057, 1063 (Ct.App. 1996); *see also Lucero v. Aladdin Beauty Colls., Inc.,* 117 N.M. 269, 272, 871 P.2d 365, 368 (1994) ("We take judicial notice of the standard 33⅓% of the total recovery ... that attorneys typically receive when retained on a contingency fee contract."). Given this general rule and the amount of work Lovett performed in this case, we do not think that Lovett's claim to the full contingency fee was so unreasonable as to constitute a violation of Rule 1–011.

{31} We do note that it appears to be the general rule in other jurisdictions that discharged attorneys are reimbursed on a quantum meruit basis, even when there is a contingency fee contract. *See, e.g., Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 148 (2d Cir.1998) (noting that under New York law, the amount recoverable by a discharged attorney

under the charging lien statute is based on quantum meruit); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz,* 652 So.2d 366, 368 (Fla.1995) (noting that under Florida law, an attorney under a valid contract who is discharged without cause after performing substantial services "is entitled to the reasonable value of the services rendered on the basis of quantum meruit, but recovery is limited to the maximum fee set in the employment contract"); *see also N. Pueblos Enters.,* 98 N.M. at 48–49, 644 P.2d at 1037–38 (holding that because a charging lien is an equitable remedy, the trial court is free to award an amount smaller than that provided for in the fee contract).

{32} Despite these authorities, we cannot conclude that Lovett willfully violated Rule 1–011 by claiming the full contingency fee. Again, the question is not whether the fees Lovett requested were actually reasonable; rather, the question is whether Lovett actually knew that the requested fees were "not warranted by existing law or a reasonable argument for its extension." *Rivera,* 111 N.M. at 674, 808 P.2d at 959. Plaintiff argues that "[i]t should not have taken much hard thinking on the part of Attorney Lovett to determine whether their one-third contingency fee was reasonable." However, as we have noted, Rule 1–011 requires proof of the attorney's subjective state of mind and does not entail a "knew or should have known" analysis. Thus, even if we could say that Lovett should have known that most jurisdictions only allow quantum meruit recovery under circumstances like those in this case, such a failure on Lovett's part would not constitute a violation of Rule 1–011. There is simply no evidence in the record that Lovett willfully claimed the full contingency fee despite the knowledge that such a claim was unfounded.

{33} We also note that the cases relied on by Plaintiff are not on point, as they all involve circumstances far more egregious than those present in this case. *See In re Roberts–Hohl,* 116 N.M. 700, 702, 866 P.2d 1167, 1169 (1994) (requiring restitution where an attorney neglected a case so egregiously that the case was dismissed for failure to prosecute, and stating that "[b]y accepting a

$5,000 retainer and taking no discernable [sic] action apart from filing a complaint, [the attorney] also charged a clearly excessive fee"); *In re Cherryhomes*, 115 N.M. 734, 734, 736, 858 P.2d 401, 401, 403 (1993) (requiring an attorney to pay restitution to client where the attorney charged the client $7,500 to represent him in a criminal matter that had already been dismissed sua sponte by the prosecutor, and the attorney's only action on the case was to fax his client a copy of the dismissal that the attorney had had no part in procuring); *In re Martinez*, 108 N.M. 252, 253–55, 771 P.2d 185, 186–88 (1989) (disbarring an attorney and requiring restitution where the attorney, in six separate matters, accepted and retained fees despite egregiously neglecting his cases; stating that "when an attorney takes even a minimal fee from a client and does little or no work on the client's case, that fee is excessive"). We are similarly unpersuaded by Plaintiff's citation to *Citizens Bank v. C & H Construction & Paving Co.*, 93 N.M. 422, 428, 600 P.2d 1212, 1218 (Ct.App.1979), in which we held that a one-third contingency fee for an appeal was not excessive because the risk was great, the agreement was negotiated at arms-length, the contract was clear and unambiguous, and the reasonableness of the fee was supported by expert testimony.

{34} Unlike the attorneys in the discipline cases cited by Plaintiff, Lovett did perform work in this case. We have already detailed that work above and need not reiterate it here. We hold that Lovett did not violate Rule 1–011 by claiming an excessive fee.

### 4. We Do Not Consider the Purported Settlement Reached in Another Case

{35} Plaintiffs have attached two documents to their answer brief that do not appear in the record proper. These documents appear to represent (1) a settlement agreement entered into in another case by Plaintiff, Lovett, and other parties and (2) an order adopting the settlement agreement. The documents appear to have been filed in the Third Judicial District Court on September 21, 2004, and September 10, 2004, respectively. Plaintiff argues that by virtue of these documents, Lovett is barred under

principles of res judicata from asserting the validity of the charging lien in this case.

{36} We do not consider matters not of record. *In re Mokiligon*, 2005–NMCA–021, ¶ 7, 137 N.M. 22, 106 P.3d 584 ("[T]his Court will not consider and counsel should not refer to matters not of record in their briefs." (internal quotation marks and citation omitted)); *see also id.* ("[I]t is improper to attach to a brief documents which are not part of the record on appeal." (internal quotation marks and citation omitted)); *State v. Wood*, 117 N.M. 682, 687, 875 P.2d 1113, 1118 (Ct.App.1994) (refusing to consider a criminal defendant's double jeopardy argument because the argument relied on facts not of record and refusing to consider exhibits attached to the defendant's appellate briefing). Accordingly, we decline to address Plaintiff's res judicata argument. However, even if we were to consider the argument, we note serious problems with any application of res judicata in this case, not the least of which is that the order attached to the brief appears to have been entered after the trial court entered the final order imposing sanctions in this case. *See Salas v. Bolagh*, 106 N.M. 613, 615, 747 P.2d 259, 261 (Ct.App.1987) ("The doctrine of res judicata applies only to final judgments.").

### 5. Plaintiff's Remaining Arguments

{37} Plaintiff argued in the district court and continues to argue on appeal that (1) Lovett's assertion of the charging lien in this case was unfounded and non-meritorious and (2) the fact that Lovett used the same case law to argue against a charging lien in a similar case shows that Lovett knew that his position in this case was unfounded and non-meritorious. Plaintiff also argues that Lovett took inconsistent positions in the two cases because (1) in the other case, Lovett argued that the prior attorney could not assert a charging lien because the prior attorney refused to itemize his time spent on the case, and (2) Lovett refused to itemize the time spent in this case. Lovett argued vigorously in the trial court that the positions were not inconsistent and that the two cases were factually distinguishable because of his belief that he did significantly more work

than the other attorney, although the trial court was not persuaded on this point.

{38} We have already held that Lovett's assertion of the charging lien in this case was not wholly unfounded or non-meritorious. Accordingly, we reject Plaintiff's argument that Lovett violated Rule 1–011 because the position advanced in the other case shows that Lovett knew that the claim asserted in this case was unfounded. We also note that Plaintiff has not directed us to any authority indicating that an attorney is not permitted to argue inconsistent positions on behalf of different clients, as long as both positions are colorable. Here, as we have explained above, there is clearly a colorable argument under New Mexico law that attorneys can assert charging liens even though they were discharged before a case actually came to fruition; conversely, there is also a colorable argument that attorneys cannot assert charging liens under such circumstances. Thus, we are not persuaded that Lovett did anything inappropriate in asserting purportedly inconsistent positions, both of which were at least colorable. Nor are we convinced that there was any impropriety regarding the issue of itemization. Plaintiff has not indicated how that issue has any bearing on whether the sanctions were properly imposed in this case.

{39} Finally, Plaintiff argues that (1) as part of the previously mentioned settlement agreement that is attached to the answer brief, Lovett admitted that it should not have taken a contingency percentage of fees earmarked for paying medical bills; (2) that the settlement was agreed to and filed before Lovett filed the docketing statement in this case, and the docketing statement argued in part that the permissible collection of medical-bill funds supported a charging lien; and (3) as a result, Lovett has violated the Rules of Professional Conduct regarding meritorious claims and candor to this Court and should be required to pay Plaintiff's appellate attorney fees. We reject Plaintiff's argument. As we have noted, we will not consider the settlement agreement and order that are attached to Plaintiff's answer brief because those documents are not of record in this case.

## CONCLUSION

{40} We hold that Lovett did not violate Rule 1–011 because the assertion of the charging lien in this case was at least colorable. Accordingly, we reverse the order imposing sanctions.

{41} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.