OPINION SUTIN, Chief Judge. {1} The Fifth Judicial District Court provided an opportunity to the parties to engage in a court-sponsored settlement conference pursuant to a local settlement conference rule. Once the parties agreed to participate, they became subject to both the local rule and to a court order, which both required good faith participation. Defendant Patterson-UTI Drilling Company, L.P., L.L.L.P. (Patterson) determined in advance of the settlement conference that it had no liability and entered the settlement conference with no intention of settling. At the conference, Patterson offered an amount only under the threat of sanction. The district court judge presiding in the case, referred to hereafter as “the district court,” sanctioned Patterson for bad faith participation, based on (1) Patterson’s failure in advance of the settlement conference to notify Plaintiff Carlsbad Hotel Associates, L.L.C. (the Hotel) and a co-Defendant, Chi Operating, Inc. (Chi), that it had determined that it had no liability and did not intend to make any offer to settle; (2) Patterson’s failure to make an offer except upon threat of court sanction by the facilitator; and (3) Patterson’s failure to further compromise from the offer it made under threat of sanction. This case requires us to consider the propriety of the sanction imposed against Patterson for violation of the local rule and the court order. Although we express some concerns about the requirement of good faith in general in the mediation context and its meaning in particular in the same context, we affirm the sanction because the order to which Patterson agreed defined good faith in a manner pursuant to which the district court could have properly found that Patterson was in violation. INTRODUCTION {2} Several insightful articles in the last several years have addressed the propriety of court rules requiring good faith participation in court-affiliated mediations and settlement conferences and the propriety of allowing courts to sanction participants for the failure to negotiate in good faith. In the eyes of several practitioners and academics, the application of a good faith requirement and the imposition of sanctions can be overly problematic. See James J. Alfini et al., Mediation Theory and Practice 287-314 (Matthew Bender & Co., Inc. ed., 2d ed. 2006); Carrie Menkel-Meadow et al., Mediation: Practice, Policy, and Ethics 301-11 (2006); Stephen J. Ware, Principles of Alternative Dispute Resolution § 4.30, at 335-37 (2d ed. 2001); Roger L. Carter, Oh, Ye of Little (Good) Faith: Questions, Concerns and Commentary on Efforts to Regulate Participant Conduct in Mediations, 2002 J. Disp. Resol. 367; Carol L. Izumi & Homer C. La Rue, Prohibiting “Good Faith” Reports Under the Uniform Mediation Act: Keeping the Adjudication Camel Out of the Mediation Tent, 2003 J. Disp. Resol. 67; John Lande, Using Dispute System Design Methods to Promote Goodr-Faith Participation in Court-Connected Mediation Programs, 50 UCLA L.Rev. 69 (2002); ABA Sec. of Disp. Resol., Resolution on Good Faith Requirements for Mediators and Mediation Advocates in Court-Mandated Mediation Programs (Aug. 7, 2004), http://wum.abanet.org/ dispute/draftres2.doc (listing articles on the subject). {3} As indicated by one effective writer on the subject, “[rjules ... that permit courts to sanction a wide range of subjective behavior create a grave risk of undermining core values of mediation and creating unintended problems.” John Lande, Why a Good-Faith Requirement Is a Bad Idea for Mediation, 23 Alternatives to High Cost Litig. 1, 9 (2005). A resolution of the American Bar Association Section of Dispute Resolution advocates examination and revision of rules authorizing sanctions for bad faith conduct in court-mandated mediation programs in order “to preserve the core values of the mediation process, namely, party self-determination, mediator impartiality, and mediation confidentiality.” ABA, supra. {4} Competing views exist as to the benefit or detriment of a good faith participation requirement in court-affiliated mediations and settlement conferences, even in those with which the parties have voluntarily agreed. There are several policies favoring a good faith participation requirement. “The call for good-faith in mediation is premised on the need to ensure that the court-ordered process is not a waste of time, that it is at least possible to achieve a collaborative resolution, and that mediation is not misused. Furthermore, some suggest that to the extent that courts order participation and parties devote resources to it, society should protect the integrity of the process.” Menkel-Meadow, supra, at 301; see also Lande, supra, 50 UCLA L.Rev. at 74 (pointing out the views that courts want to ensure that the time and money spent for mediation are well spent and that stakeholders also want to ensure maintenance of the integrity of the court-affiliated mediation programs). {5} However, there exist a number of concerns about and policies disfavoring a good faith participation requirement. These are addressed in the articles listed earlier in this opinion. There are problems defining “good faith” and wrestling with subjectivity, and with commensurate concerns about adequate notice to the parties for what they can be sanctioned. In addition, requiring facilitators to report bad faith can compromise their facilitative and neutral roles and can produce unwanted incursion into confidentiality. Also, the sanction possibility gives one party a weapon against the other, thus encouraging, if not increasing adversarial behavior. Furthermore, the enforcement of sanctions creates satellite litigation resulting in more time and costs, something that mediation is meant to reduce. Also prominent is an overriding notion of a party’s right to access to the court to have a claim resolved by a jury, together with the party’s right to control how the case is presented, with no limitations by coercion or threat of sanction. Finally, because mediations are not on the record, a party and the facilitator may disagree on what occurred. A hearing to take evidence on what occurred not only invades confidentiality, it is likely to produce conflicting views of what occurred in the mediation. This conflict would raise fact and credibility issues which, in turn, would raise questions whether the facilitator, whose view of what occurred in mediation would be in play, can in fairness sit in judgment. {6} In the present case, neither the local rule nor the order discusses whether the settlement conference was to be conducted in a manner consistent with norms and the principles of mediation, which require neutrality and impartiality of mediators, strict confidentiality, voluntary settlements, and self-determination (that is, the right of the parties to control whether an offer is made and the amount of any offer). See Izumi, supra, at 80-87; Alfini, supra, at 298-99, 312 (questioning, in the author’s review of Pitman v. Brinker Int’l, 216 F.R.D. 481 (D.Ariz. 2003), whether different standards should apply to a judicial settlement conference conducted by a federal magistrate, on the one hand, and a mediation, on the other). {7} Our analysis and determination in this case is driven, however, by the particular scheme into which the parties chose to enter. In this ease, all parties agreed voluntarily to a settlement conference; consequently the district court issued an order providing for such a conference, thus bringing the proceeding within the sphere of the court’s local rule on good faith negotiations. Under these circumstances, it is clear to us that Patterson was bound by the requirements of the local rule and order and can complain only if it is able to show that the court erred in the application and enforcement of its local rule and order. We hold that Patterson has not made that showing and that the court did not err. We also hold that Patterson cannot complain about the facilitator’s role in acting essentially as a hearing officer on the question whether sanctions were appropriate. BACKGROUND {8} The Hotel sued Patterson and Chi seeking loss of business damages allegedly resulting from a gas well blowout and subsequent emergency evacuation in Carlsbad, New Mexico. Patterson and Chi filed cross-claims against each other. At a Rule 1-016 NMRA scheduling conference in October 2004, the parties agreed to participate in a settlement conference pursuant to the district court’s local rule LR5-205 NMRA. LR5-205(A) provides that “[a] settlement conference will be ordered if the trial judge deems it to be appropriate or after agreement by counsel that such a conference may result in a settlement of some or all of the issues in the case.” The court ordered the parties to contact another judge in the same judicial district, Judge Currier, to conduct the settlement conference pursuant to LR5205. See LR5-205(A) (“[A] settlement conference may be conducted by a judge of this district who is not assigned to the case[.]”). Pursuant to LR5-205(C), Judge Currier was expected “to promote a settlement” and was charged with the responsibility of being “an active participant in the conference.” {9} The court thereafter entered an order in which it referred the matter to Judge Currier for the settlement conference, set the conference for February 2005, required that each party send to Judge Currier, but not to the opposing party, a letter or memorandum summarizing the issues and giving an appraisal of the strengths and weaknesses of the positions of all the parties in the case. The order also required good faith participation, as follows: All parties shall have settlement authority and shall participate at the settlement conference in good faith. This means that, absent truly unusual circumstances, the parties will be expected to compromise from their last offer. Sanctions may be imposed if a party does not participate in the settlement conference in good faith. LR5-205(B) similarly requires good faith participation: All parties shall participate at the settlement conference in good faith and sanctions shall be imposed if the settlement conference judge finds that a party has not participated in good faith in the settlement conference, and the trial judge adopts the findings made by the settlement conference judge. {10} Patterson submitted a “confidential position paper” that included an accountant’s report indicating that the Hotel’s damages were overvalued and that its damages were approximately $9140. This report was also given to the parties before the settlement conference. Patterson represents that it also explained “its position of no liability to Judge Currier ... in the confidential mediation position paper.” {11} From all appearances, Patterson and the Hotel did not exchange any settlement offers. Chi, who had already settled with several hundred claimants in other lawsuits or non-litigation settlements, offered $10,000 before the settlement conference. The Hotel’s demand at the conference was approximately $32,000, which did not include an amount for punitive damages. At the settlement conference, Patterson stated that it had no liability and it made no initial offer. Judge Currier reminded Patterson of the district court’s order and informed Patterson that he thought it was violating the order by not participating in the process in good faith. Based on Judge Currier’s own assessment of Patterson’s risk, Judge Currier insisted that Patterson make an offer and reminded it again of bad faith. After a threat of sanctions, Patterson offered $1000 toward settlement. Judge Currier informed Patterson that he did not believe $1000 would satisfy its duty to participate in good faith. Patterson represented that if the other parties were close to settlement, refusing to specify what it meant by “close,” it might be willing to contribute enough to settle the case. After consulting with Chi and to follow up on Patterson’s representation, Judge Currier asked Patterson if it would be willing to pay $5000 to get the ease settled. The Patterson representative indicated that he would do so if Judge Currier could guarantee that the $5000 would produce a settlement. Judge Currier would not make the guarantee, but he indicated that he was confident the case would settle with an additional $5000 from Patterson. Nonetheless, Patterson made no further offers, and the settlement conference ended without reaching a settlement after about five hours of mediation. {12} After the conference, Judge Currier submitted a sealed, written report of findings to the district court that indicated Patterson had refused to participate in the settlement conference in good faith. In addition, the Hotel and Chi moved for sanctions against Patterson and asked for reimbursement for the costs of their representatives to attend the conference and for attorney fees. {13} After reviewing the matter, the district court instructed Judge Currier to conduct a hearing to determine the good faith issue under the local rule and the court’s order and to enter sanctions if appropriate. Patterson then filed a motion requesting that Judge Currier be recused from hearing the pending motions for sanctions (1) because in his role as mediator he had recommended sanctions, (2) because he had personal knowledge of the disputed evidentiary facts concerning the mediation, and (3) because he was a material witness whose testimony may have been required for the hearing on the motions for sanctions. The district court denied Patterson’s motion, and Judge Currier heard the motions for sanctions on July 1, 2005. {14} At the outset of the hearing on the motions, when asked by Patterson in what capacity he was acting, Judge Currier explained that he had acted in the matter as a mediator but in conducting the hearing on the issue of bad faith he was acting as a judge, comparing the process to that of a judge who is deciding an issue of direct contempt. Judge Currier pointed out, too, that Patterson offered $1000 only after he had told Patterson’s representative that he would be held in contempt if Patterson did not make an offer. Further, Judge Currier stated that he “consider[ed] $1000 to be merely a token.” Judge Currier reaffirmed the conclusions he had reached during the settlement conference, namely: 1. Patterson agreed to mediate and knew the contents of the court order four months prior to the mediation. 2. Patterson came unwilling and unprepared to settle, short of an unconditional dismissal. 3. [The Patterson representative] was not a person with full settlement authority and demonstrated a level of disregard if not arrogance for the mediation process that I have not previously witnessed. The conduct of [the Patterson representative] and Patterson also showed disrespect for the other participants. 4. [The Patterson representative] was warned on at least three occasions that Patterson was not participating in the mediation process in good faith. {15} At the end of the sanctions hearing, Judge Currier indicated that the problem he saw with Patterson’s conduct was that Patterson had determined by early November 2004 that it had no liability and that it did not intend to offer any money, but waited until the settlement conference to disclose this position to the other parties. Judge Currier stated that he believed Patterson was using the settlement conference merely for the purpose of discovery “to find out what it was that the other side had that they could point a finger at in regard to Patterson.” {16} After the hearing on the motions for sanctions, Judge Currier entered an order indicating that “the [c]ourt [had] read its findings into the record regarding the mediation” and stating that Patterson had “conducted itself in bad faith at the mediation.” Afterward, Judge Currier entered a supplemental order that required Patterson to pay the Hotel $5,156.67, which represented attorney fees and the wages of the employees who attended the conference, as a sanction for participating in the settlement conference in bad faith. Patterson appealed that order. Judge Currier also ordered that Patterson pay sanctions to Chi; however, those sanctions are not before us on appeal. {17} While Patterson’s appeal was on this Court’s summary calendar (proposing dismissal for lack of a final order), the case settled with Chi paying $17,500 and Patterson paying $1000. Before settling, however, the Hotel filed a motion requesting the district court to adopt the findings and decision by Judge Currier and thereby to impose the sanctions in Judge Currier’s order against Patterson. The district court heard argument on the sanctions; listened to the record made at the hearing conducted by Judge Currier on July 1, 2005, which included Judge Currier’s view of what occurred at the settlement conference, the Patterson representative’s testimony, and statements of counsel; and ultimately agreed with Judge Currier. {18} The district court entered an order adopting the findings and the decision of Judge Currier. The court stated that settlement conferences were not mandated, that they were instead “offered as essentially a service in efforts to facilitate settlement,” and that “[n]o one has a ‘gun to their head’ requiring that any party agree to participate.” The court further indicated that “when a settlement conference is agreeable to the parties, time, effort and attorney[] fees are necessarily expended in a good faith hope that settlement may be had. All that is required of any party is good faith.” The court then stated: 8____[Judge] Currier found that Patterson determined from at least early November 2004 that it had no liability. And, in agreeing to participate in a settlement conference, Patterson did not disclose to the other parties that it intended to offer no monies whatsoever in settlement. Therefore, from fall of 2004 through early February Patterson allowed the other litigants to expect and believe that settlement by Patterson was at least a possibility. 9. [Judge] Currier further stated ... that Patterson used the settlement process merely for discovery: “to find out what it was that the other side had that they could point a finger at in regard to Patterson.” 11. [Judge] Currier noted that it would have been entirely reasonable for Patterson to express that it had nothing to offer based on [its] belief of no liability. Such would have been entirely within Patterson’s right — and ultimately, it was Patterson’s obligation to do so. 12. Patterson argues that to impose sanctions would have a chilling effect on the settlement process, arguing that [Judge] Currier was trying to impose a judicially determined amount for purposes of settlement____ 13. However, Patterson entirely misses the point with regard to the reason for imposition of sanctions.... Patterson put all parties through an exercise in futility by virtue of agreeing to such a conference. The amount of money — the $1,000 — was extracted only after threat by [Judge] Currier to impose sanctions. Based on these and other findings of fact, and after adopting Judge Currier’s findings and decision “in full,” the district court ordered that Patterson immediately pay the Hotel the sanctions recommended by Judge Currier. {19} Patterson appeals the supplemental order of Judge Currier and the district court’s order that required it to pay sanctions. First, Patterson contends that the court erred because “[failure] to offer a judicially determined settlement amount does not constitute bad faith warranting the imposition of sanctions.” Second, Patterson contends that it was improper for Judge Currier, as mediator, to preside as a judge at the hearing on the motions for sanctions. DISCUSSION Sanctions Standard of Review {20} There are no New Mexico cases addressing the imposition of sanctions for bad faith participation in a settlement conference or mediation. The parties to this appeal agree that we review whether the district court properly sanctioned Patterson by using the abuse of discretion standard. Patterson likens the issue to the review of the imposition of Rule 1-011 NMRA sanctions, as in Rangel v. Save Mart, Inc., 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983. Similarly, the Hotel compares the sanctions in this case to the imposition of discovery sanctions under Rule 1-037 NMRA, as in Gonzales v. Surgidev Corp., 120 N.M. 151, 156-58, 899 P.2d 594, 599-601 (1995). {21} An abuse of discretion occurs “when the court’s decision is without logic or reason, or ... clearly unable to be defended.” Id. at 157, 899 P.2d at 600 (alteration in original) (internal quotation marks and citation omitted). A district court abuses its discretion if its ruling is based on an erroneous view of the law. Rangel, 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983. “It is not the function of a reviewing court to substitute its own interpretation of a local rule for that of the court which promulgated the rule.” James v. Brumlop, 94 N.M. 291, 295, 609 P.2d 1247, 1251 (Ct.App.1980). The Sanctions Were Not an Abuse of Discretion {22} Patterson argues that the district court erred by construing the good faith requirement to require Patterson “to accept a judicially predetermined amount for settlement, in excess of the amount Patterson believed to be the settlement value of [the] case.” Patterson relies on federal case law to support its position, particularly the case of Dawson v. United States, 68 F.3d 886, 887 (5th Cir.1995), which overturned sanctions for failing to offer to settle pursuant to a local rule requiring a “good-faith effort to settle.” In support of the sanctions, the Hotel refers to sanctions available under the inherent power of the court to control its docket, see, e.g., Gonzales, 120 N.M. at 154-55,157, 899 P.2d at 597-98, 600, as well as to Rule 1-016(F) NMRA which governs sanctions related to pretrial conferences. See LR5-205(A) (stating that under Rule 1-016 “a settlement conference may be conducted by a judge of this district”). {23} The extraction of coerced settlement offers through threat of sanctions can be acceptable, if at all, only in extremely limited circumstances. The present case puts this principle to the test. We believe that, under the specific circumstances of this case, the decisions of Judge Currier and the district court may stand. It is the specific circumstances in this case that set this case apart from Dawson and other cases that disfavor sanctions imposed for lack of good faith participation. Contrary to the implication in the dissenting opinion, this case is not about a judicially predetermined settlement amount, which is Patterson’s sole position on appeal. It is also not about a party that came to a settlement prepared to compromise in any voluntary way; the court below found on the basis of the facts before it that Patterson made its first offer only under threat of sanction. The conclusions in the dissenting opinion therefore appear to us to be refinding the facts, something an appellate court should not do. See, e.g., Blaze Constr. Co., Inc. v. Taxation & Revenue Dep’t, 118 N.M. 647, 653, 884 P.2d 803, 809 (1994); Clayton v. Trotter, 110 N.M. 369, 371, 796 P.2d 262, 264 (Ct.App.1990). Instead, this is a case about a party who had no intention of ever settling, who put the parties and the court through the expense of a futile settlement facilitation, and who would only offer a token amount after a warning and threat of sanctions. {24} Here, the settlement conference was not mandated. The parties expressly agreed to participate in a settlement conference and to do so in good faith. They understood that the conference was governed by the express good faith requirement in LR5-205(B) and in the court order for the settlement conference. The rule and the order requmed not only good faith participation, but the order explicitly informed the participants that “absent truly unusual circumstances” they were “expected to compromise from their last offer.” Furthermore, they knew that another district court judge would act as the facilitator who was not only “expected to promote a settlement” but was affirmatively charged with the responsibility of being “an active participant in the conference.” LR5-205(C). The district court carried the power to sanction by rule and by court order, as well as by its inherent power. {25} At the same time, Patterson was a sophisticated participant and should have been aware based on the language of the rule and the order that it was entering into a settlement conference with the possibility, if not likelihood, that it would be required to make a bona fide effort to reach a compromise. Further, Patterson should have been aware that the facilitator would engage in an evaluative process and press Patterson to make an offer that the facilitator would believe was made in a good faith effort to compromise. The ambiguity, lack of restricted and definite meaning, and subjective nature of the words “good faith” and “compromise from the last offer” can be no defense to Patterson in this case because Patterson has not raised those questionable characteristics of the rule or the order as a basis of error or for reversal. In fact, Patterson raises no issue of lack of fair or reasonable notice of what conduct was sanctionable, and Patterson nowhere argues that it was not given reasonable or fair notice that its conduct in this case would be subject to sanctions. {26} While we question the wisdom of placing in a settlement conference rule or order a good faith requirement or a requirement that a party compromise from the last offer, we see no basis on which to hold that the court erred in requiring Patterson upon threat of sanction to make an initial offer. We also see no basis on which to hold that the court erred in sanctioning Patterson for coming into the conference with no intent to make any offer and then for refusing to compromise further after making the initial offer. With LR5-205 in place and the court’s order agreed to, we cannot say that Judge Currier or the district court acted arbitrarily, capriciously, against reason or logic, or under an erroneous view of the law. Judge Currier and the district court acted within the parameters of the rule and the order. Patterson does not argue that any particular constitutional or statutory provision or any other law was violated by Judge Currier or the district court in considering the good faith of Patterson. Patterson, in our view, agreed to the rules of the game established in the local rule and the court order, and we cannot say that the district court abused its discretion in ruling that Patterson did not act in good faith and was subject to sanctions. Judge Currier Could Entertain the Motions for Sanctions {27} Patterson argues that it was improper for Judge Currier to preside as judge at the hearing on the Hotel’s motion for sanctions. Patterson takes the standard of review to be that of abuse of discretion. We see the issue to be whether the district court abused its discretion in selecting Judge Currier to consider whether sanctions were appropriate. As indicated earlier in this opinion, an abuse of discretion occurs when the court’s decision is without logic or reason, is clearly unable to be defended, or is based on an erroneous view of the law. See Gonzales, 120 N.M. at 157, 899 P.2d at 600; Rangel, 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983. {28} The settlement conference was to be confidential and is not of record on appeal except to the extent of recollections of what occurred as recounted in the July 1, 2005, hearing. Thus, confidentiality was arguably breached in the hearing and then when Judge Currier reported what occurred in the settlement conference to the district court. Further, although the July 1, 2005, hearing was sequestered and sealed “except as to the Appellate Courts and counsel for Patterson,” the briefs of both parties cite portions of the hearing, and the Hotel cites portions of the hearing from which it was excluded; the Hotel thus apparently has had access to the record of the hearing. Because the case has settled and the parties both cite the hearing, we conclude that the parties have waived settlement conference confidentiality. {29} It is fair to question the wisdom, if not the fairness, of having a mediator or settlement facilitator also sit as a district court judge in ultimate judgment of credibility, factual disputes, and law on the issues of good faith and sanctions. We do not, however, see the need to address this concern in this case. We construe the district court’s assignment of Judge Currier to hold a hearing on the motions for sanctions to be an assignment to act essentially as a hearing officer. Although the tenor of Judge Currier’s rulings took on an air of judicial finality, his rulings were treated by the district court as recommendations. The district court conducted its own, independent review of the proceedings and came to its own independent conclusions in regard to the circumstances and the justification for sanctions. Because the final analysis and decision on sanctions were made by the district court, we reject Patterson’s arguments that allowing the process “would fly in the face” of Rule 1-088.1(D) NMRA and Rule 21-400(A)(1), (3), (4), and (6)(a) NMRA, relating to district judge recusal when a judge’s impartiality is in question. Nor do we see a due process violation under the New Mexico Constitution, article II, section 18 as is also argued by Patterson. Furthermore we maintain our view that Patterson agreed to and was bound by the process contemplated under the local rule and the court order. {30} In conclusion, while we think that the process employed here, of utilizing the facilitator as a hearing officer on the issue of good faith, is somewhat troubling, we cannot say that the district court abused its discretion in permitting Judge Currier to hear the motions for sanctions when, in the final analysis, the district court conducted its own full-record review and independently concluded that sanctions were appropriate. The Mediation Procedures Act {31} While it does not control the outcome of this case, we note that subsequent to the settlement conference in this case the New Mexico State Legislature passed the Mediation Procedures Act (the Act), NMSA 1978, §§ 44-7B-1 to -6 (2007). This Act governs “mediation[s] in which ... the mediation parties are required to mediate by statute or court or administrative agency rule or are referred to mediation by a court, administrative agency or arbitrator^]” Section 44-7B-3(A)(1). The Act also covers circumstances where the parties and mediator agree to mediate as long as the agreement “is evidenced by a record that is signed by the mediation parties.” Section 44-7B-3(A)(2). The Act nowhere requires good faith participation or provides for sanctions for failing to act in good faith. See §§ 44-7B-1 to -6. Further, the Act contains the following confidentiality provision: “Except as otherwise provided in the [Act] or by applicable judicial court rules, all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding.” Section 44-7B-4. While the Act contains exceptions to the confidentiality provision, there is no exception for use to determine whether a party participated in the mediation in good faith. See § 44-7B-5. We offer no view here as to whether the scope of the Act is intended to include rules such as LR5-205 or orders such as that entered in the present case. CONCLUSION {32} We affirm the district court’s sanctions against Patterson. The parties will bear their own attorney fees and costs on appeal. We wish to emphasize that we affirm because we see no constitutional, statutory, common law, or equity basis on which to reverse. We respectfully hope that the Fifth Judicial District Court, as well as other district courts throughout the State that have a good faith requirement similar to or the same as that of the Fifth Judicial District Court, consider the elimination of the good faith requirement in their court-facilitated settlement programs. We also respectfully suggest that, under its rule-making and rule-approval authority and its power of superintending control, as well as its authority to decide procedural matters based on policy considerations, our Supreme Court disapprove any future rules containing a good faith requirement and enter an order requiring existing rules to delete that requirement. {33{ IT IS SO ORDERED. I CONCUR: LYNN PICKARD, Judge.